22 C. C. P. A. (Patents)

**RONNING MACHINERY CO. v. WINSOR.**
Patent Appeal No. 3447.

Court of Customs and Patent Appeals.
April 8, 1935.

Andrew E. Carlsen, of Minneapolis, Minn. (Theo. K. Bryant, of Washington, D. C., and George L. Wilkinson, of Chicago, Ill., of counsel), for appellant.

Hull, Brock & West and John B. Hull, all of Cleveland, Ohio, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellant has appealed to this court from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences, in awarding priority of invention in nine counts, which were copied by the appellee, Winsor, on July 27, 1929, from appellant's patent, of which count 2 is illustrative and follows:

"2. The combination with a tractor, of a frame secured to and extending forwardly from the tractor, a wheeled support for the forward end of the frame, a grader blade adjustably carried by the frame rearwardly of the support, an operator's station, and controls extending from said wheeled support and from said grader blade to within reach of the operator at said station."

The senior party, Ronning Machinery Company, which will, for brevity, be hereinafter referred to as Ronning, is involved upon an application for reissue of patent No. 1,706,256, issued March 19, 1929, upon an application filed March 12, 1921. The junior party's application was filed April 7, 1923. The two applications involved were copending, and Winsor, being the junior party, was under the burden of establishing his priority by a preponderance of the evidence.

The interference relates to the structure of a grader designed for one-man operation, and consists of a combination of a tractor, with the front wheels omitted, and an attached framework extending along the sides of the tractor and connected to the rear thereof, which frame extends forward

and is supported by steering wheels. Between the steering wheels and the tractor is suspended the grader blade. A means attached to the frame is provided for lowering, raising, and adjusting the blade. The action of the blade and the steering of the grader is controlled by one man who is stationed on a platform about midway between the front and the rear of the grader.

Ronning made no attempt to prove a date of conception and reduction to practice prior to March 12, 1921, and is restricted to that date for conception and reduction to practice.

Winsor claims conception in 1918, and offered considerable evidence in support thereof, but the facts of record chiefly relied upon by Winsor as showing his conception and reduction to practice occurred in the year 1919, when Winsor claims he reduced the invention to practice by building a grader and thoroughly testing it. The sufficiency of the proofs of reduction to practice as early as 1919 on the part of Winsor is severely criticized here, as it was in other interferences and actions relating to the same general subject-matter.

Appellant argues two main questions here: First, that the record does not establish that Winsor conceived and reduced his invention to practice in 1919, and that he has not therefore shown that he was the first inventor in fact, and that his long delay in claiming the invention after his alleged reduction to practice is persuasive, under the well-settled rule, that what he accomplished amounted to nothing more than an abandoned experiment; second, that even if Winsor did complete his invention in 1919, he is estopped from claiming the same in this interference. The estoppel is grounded upon three different theories: (a) That Winsor conceded priority of the subject-matter of these counts in an interference proceeding in Canada; (b) that Winsor delayed too long before claiming the invention, knowing at the time that Ronning claimed the invention and that Winsor's conduct, hereinafter discussed, misled Ronning to his great injury; (c) that Winsor failed to copy the claims of Ronning's patent, No. 1,658,354, within two years of its issue date.

We will first consider the facts of record relating to Winsor's conception and reduction to practice. The record is voluminous, and the Examiner of Interferences and the Board have discussed it in great detail, and, in view of the fact that we agree with the Examiner of Interferences and the Board in their understanding of what the evidence shows and the effect to be given it, it will not be necessary for us to comment extensively on certain unimportant features of the same.

Winsor testified that he was a mechanic with considerable experience in working on automobiles, motortrucks, tractors, and internal combustion engines; that he had been interested in one-man control, and had applied the same to a passenger boat which he operated on Walloon Lake; that during a part of the years 1917 and 1918 he was in partnership with a party by the name of MacLean in Detroit, which partnership was dissolved in February, 1918; that he then went to Walloon Lake to cut and store ice; that in January, 1918, he made a drawing (Winsor Exhibit C) and explained the same to MacLean. This drawing discloses the structure involved in the counts at bar. Winsor stated that he explained the one-man tractor grader and showed the drawing to witnesses Hewitt and Williams in February, 1918, and that he talked over the tractor grader with one Robnolte, who was manager of the Quinlan ranch or farm located near Pellston, Mich., and that Robnolte gave him permission to use the Cleveland farm tractor which Robnolte had bought through Winsor while Winsor was working for the Homer Sly Auto Company.

MacLean's, Williams', and Hewitt's testimony corroborates Winsor as to the disclosure made to them in the spring of 1918. They testified that they saw the drawing (Winsor Exhibit C).

The tribunals below did not regard it as necessary to determine whether or not the evidence as to Winsor's 1918 activities should be regarded as sufficient to prove conception, since they concluded that Winsor's proof of what he did in June, 1919, was satisfactory proof of conception and reduction to practice; that the happenings in the spring of 1918 might be regarded as throwing some light upon the June, 1919, events, and that all these alleged happenings occurred before March 12, 1921, which was the date to which Ronning was restricted.

Winsor testified that in June, 1919, he was in the employ of the Homer Sly Auto Company, Petoskey, Mich., and that during that month he constructed a one-man tractor grader, the tractor of which he borrowed from Robnolte, the manager of the Quinlan ranch; that he used a four-wheeled

horse-drawn road grader belonging to the township, and that one McDermott, a blacksmith in Petoskey, made some of the parts. Winsor states that Robnolte, Eldred, McDermott, and Williams, as well as other persons, saw the completed machine. Winsor's Exhibit D is a drawing made subsequent to that date, but which, according to the witnesses, shows the kind of machine which was built at that time. Winsor states that he and Robnolte operated the tractor grader on a section line dirt highway adjacent the Quinlan ranch to clean up the ditches and round up the road. Winsor states that the operation was a complete success. After being operated parts of three or four days, the structure was dismantled and the tractor returned to Robnolte and the grader to the township. Each night after operating the grader it was necessary to disassemble it in order that the tractor might be ready for use on the ranch.

Robnolte completely corroborates Winsor, and we have observed no particular in which his testimony was in any way weakened. Robnolte testified that the tractor used had been bought through Winsor, and that Winsor agreed to service it for one year, and that during the fall of 1918 Winsor talked to him about a one-man power grader; that during the planting season in the spring of 1919 he loaned the tractor to Winsor. Robnolte describes in detail the structure of the tractor grader, and states that he assisted in the assembly of it, and identified the sketch, Exhibit D, as looking "like substantially the same thing in all details" as the machine constructed. He stated that he saw the machine operate several times on the township road south of the buildings on the ranch, and that he considered it worked very good and "it did all the jobs necessary in grading roads. It did wonderful work."

Eldred testified that he had known Winsor since 1912; that in the spring of 1918 Winsor talked to him about a one-man grader, and that he saw the drawing, Exhibit C, at that time; that in the spring of 1919, while driving in Northern Michigan, he saw Winsor driving a tractor grader similar to that shown in Exhibit D; that he looked at it for from twenty minutes to a half hour and saw it driven about twelve to fifteen rods along the side of the ditch; and that it "brought up a nice furrow of dirt."

McDermott, the blacksmith, stated that he made the iron parts for a one-man trac-tor grader in which the grader was to be pushed ahead of the tractor; that he fixed the date as of June 3, 1919, by the notation "repairing tractor" in his daybook under that date; that Winsor and Williams helped him; and that about July, 1919, at the Quinlan farm, he saw, on a grader, the braces which he had made, but that he never saw the machine operate.

Williams testified that Winsor explained his one-man grader idea to him in the spring of 1918 and showed him the sketch (Winsor's Exhibit C), and that in the spring of 1919 he helped McDermott make the irons at the blacksmith shop and later saw these irons forming part of the one-man grader, that Exhibit D shows the same machine that he saw on the Quinlan farm, but that he did not see the machine operated.

Robert D. Scott worked with Winsor for the Andrew Manufacturing Company in the latter part of May or the early part of June, 1921. Scott testified that while at a hotel in Milwaukee, during this period, Winsor drew sketches of his invention and explained it to him. The sketches were not, however, produced in evidence. Scott testified that the details of a blueprint showing a machine responding to the counts at bar, which blueprint he was handed while testifying, might not be the same, but that "the general design is identical." The blueprint, however, bore the date of May 21, 1924.

For the purpose of rebutting Winsor's proof as to his activities in 1919, Ronning introduced five witnesses: Frank L. Grace, Fred Grauel, John Grauel, William Sydow, and Verne Ritter.

Witnesses Grace and Ritter were employed on the Quinlan farm in the year 1919. They testified that they traveled on the road between Quinlan's Corners and Grauel's Corners during the summer of 1919, and that they did not see any grading or ditching on that road. They also stated that they did not hear the tractor being operated.

Fred Grauel and John Grauel testified that in June and July of 1919 they lived at Grauel's Corners about a mile from the Quinlan farm, that they traveled the township road during that period, and that they did not see any signs of grading, ditching, filling of holes, or other work on the road during that period.

Witness Sydow in 1919 was the highway commissioner of Maple River township

in which the dirt road in controversy was located, and had charge of the roads and tools. He testified that he did not know Winsor and that he did not remember any one borrowing the township grader in the summer of 1919.

This testimony was introduced approximately ten years after the alleged happenings had occurred. In view of its negative character and of certain surrebuttal testimony introduced by Winsor, we cannot give great weight to the same.

Robnolte was called by Winsor in surrebuttal, and testified that Grace and Ritter during June and July of 1919 were working under him on the Quinlan farm, but places them during the time in question at points where they would not be likely to see or hear the grader in operation. He testified to these facts from his time book containing memoranda applicable to each man for each day.

All the above related testimony had been introduced and considered in other proceedings and was incorporated into the record at bar by agreement. On more than one occasion it has been held to be sufficient proof of Winsor's conception and reduction to practice in June, 1919. While res adjudicata on this issue is not claimed by any one, it is urged by appellee that prior holdings on identical evidence should be persuasive. Appellant, in reply to this contention, points to the testimony of John William Moomau, whose testimony was not in certain of the other proceedings referred to.

In an interference between Winsor and one Myers, which involved Winsor's alleged June, 1919, reduction to practice, Moomau, a mechanic and automobile salesman, testified that he had been service man for the Cleveland tractors and that he was familiar with the different models and their construction; that he did not believe that Winsor could have connected the Quinlan Cleveland tractor to the horse-drawn grader. This testimony was contradicted in some respects by the testimony of Edward H. Savage, a mechanical engineer of the Cleveland Tractor Company. The testimony of both witnesses relates largely to the clearance of the different models of the Cleveland tractor. We do not find in this testimony anything which is convincing that Winsor did not build the grader as claimed in 1919. If it would have been impossible to have attached the township grader to the particular model of tractor used on the Quinlan farm, it would seem that this phase of the case would have been given more attention and more convincing evidence to that effect could have been introduced.

Appellant argues that since Winsor, while with the Wehr Company, did not design a grader along the lines of his alleged 1919 reduction to practice, and since he designed a snowplow and took out a patent on the same while working for the Wehr Company, it is highly improbable that he had at that time any conception of a machine embodying the subject-matter of the counts at bar, or, if he had such a conception of such a machine and had constructed one, he had abandoned it. Ronning's Exhibit 33, which was produced while Winsor was working for the Wehr Company, is quite similar in construction to the type of machine which Winsor constructed in 1919.

Upon the foregoing testimony, we think the tribunals of the Patent Office were fully justified in concluding that Winsor had conceived and reduced to practice the invention defined by the counts as early as June, 1919.

The record does not show that Winsor had any intention of abandoning his invention or that his experiments and efforts were unsuccessful. Abandonment must be clearly proven by the party who asserts it. Ide et al. v. Trorlicht, Duncker & Renard Carpet Co. et al. (C. C. A.) 115 F. 137, 144; Hoenig v. Parker, 50 App. D. C. 21, 267 F. 323. The instant record shows that after his reduction to practice Winsor was without personal funds to commercially exploit his invention or to file an application thereon. In the fall of 1919 he entered the employ of the Monarch Tractor Company at Watertown, Wis. A fellow employee, Holcombe, a witness for Ronning, testified that he knew Winsor and was closely connected with him and that he and Winsor visited Boine City during the time they worked for the Monarch Tractor Company and there talked to the officers of the Boine City Tractor Company about making their tractor (the Boine City Tractor Company tractor) suitable for certain sales possibilities. The record does not show that Winsor brought his invention forward at that time. Winsor states, however, that while in the employ of the Monarch Tractor Company he did talk to the executives of that company about interesting them in the manufacture of his one-man grader, and that the officials declined to take it up for financial reasons. The testimony on this phase of the case is somewhat in conflict.

Following his employment with the Monarch Tractor Company, Winsor was employed by the Wehr Company in May, 1921. Winsor testified that his first attempts to interest the Wehr Company in building his grader were unsuccessful, since the company was not interested in machinery of this size, but that it later in the year 1922 began the manufacture of a machine of the type of his 1919 construction. The record shows that while with the Wehr Company Winsor designed a machine referred to as a maintainer. This machine is a combination of an ordinary tractor and a scraper blade, which blade is mounted beneath the tractor and is used for smoothing the road. Winsor eventually secured a patent on this maintainer. Later, while working for the Wehr Company, Winsor designed a snowplow which the Wehr Company manufactured.

We will next consider the question of estoppel. As bearing upon this issue, appellant has introduced much evidence and brought forward numerous affidavits, voluminous correspondence, and other printed exhibits which we can only briefly refer to here. Ronning contends, first, that Winsor should be estopped from claiming the invention because of his concession of priority on June 8, 1925, which was filed in connection with an interference proceeding in Canada. The concession reads, in part, as follows:

"That in order to expeditiously settle this controversy and eliminate the necessity for taking formal testimony in the premises, the parties hereto have, by their respective attorneys, as here of record, met in conference for said purpose, and have submitted to each other their respective facts, data and proofs and other evidence for the purpose of establishing priority of invention as to the counts or claims of the conflict.

"That, at such conference it was established by the evidence submitted, that the invention described by the claims in conflict was conceived by Roy J. Winsor, not earlier than January 1, 1918, and that said invention, and many variations and modifications thereover, was conceived, disclosed to others, drawn, described and reduced to practice by the party, Ronning and Ronning long prior to 1918.

"That I have read the paper hereto attached, containing a copy of fifty-six claims, all of which read on the Ronning and Ronning disclosures. That the said claims include the claims of conflict, other claims pending in the Ronning and Ronning application, and also other claims which have been prepared for the purpose of being added by amendment to the Ronning and Ronning application.

"That by reason of the facts hereinabove set forth I hereby concede priority to Ronning and Ronning of all the claims appended hereto, and hereby formally disclaim the invention set forth, generically or specifically in each and all of said claims, and waive all rights thereto in favor of the party, Andrean G. Ronning and Adolph Ronning, and hereby request the Hon. Commissioner of Patents to dissolve the conflict accordingly.

"Roy J. Winsor."

The record shows that Andrew E. Carlsen, attorney for Ronning in December, 1924, received notice of an interference or conflict between the Ronning application and the Winsor application in Canada, and that later he was approached by James R. Hodder, who was acting as Winsor's attorney, with reference to the interference, and that Hodder went to Minneapolis, Minn., in January, 1925, for the purpose of settling the Canadian interference amicably; that conferences were held in Minneapolis and in Washington during the first part of the year 1925; that Ronning submitted his proofs to Hodder. Carlsen states that Hodder agreed to recommend that Winsor concede priority to Ronning. The above-quoted concession was then drafted and signed by Winsor on June 8, 1925, and the interference or conflict in Canada was terminated on June 26, 1925. The Ronning Canadian patent, which included the claims at bar and a number of other claims, issued on September 21, 1925. Carlsen was familiar with Winsor's American patent application and claims, and stated that he kept Hodder in touch with the Ronning application.

The Hadfield-Penfield Company was a licensee of Winsor. Winsor had lost an interference to one Myers, an inventor of machinery similar to that of Winsor, which made it seem important to both Ronning and Winsor, as well as Winsor's licensee, in the early part of 1925, that they, in some manner, present a united front in patent matters to their competitors. Just what they fully intended to do at the time is not clearly disclosed by the record, except, we

think, that it does appear that at about this time both parties hoped to avoid extended litigation in Canada, and possibly to pool their patent interests here and arrive at some satisfactory working agreement among themselves. The record, however, does not disclose that any disposition was made of the United States patent rights of the parties such as is shown by the so-called Canadian concession.

Appellant contends that the record shows that Ronning regarded the Canadian concession as being an admission by Winsor that he was not the first inventor of the subject-matter of the counts at bar, if that question was raised in connection with the patent activities of the parties in the United States, and that the Ronning Company expected Winsor's application to be abandoned, and that, acting upon such belief, with Winsor's knowledge, it executed new agreements with manufacturers, greatly extended its business, and, jointly with Winsor's licensee, issued a statement to the trade, which statement is too lengthy for repetition here, and that, by reason of the foregoing facts, Winsor has placed himself in such an inequitable position that he is estopped from claiming priority.

It is our view, first, that the Patent Office tribunals were fully justified in concluding that the Canadian concession could form no possible basis for the application of the doctrine of estoppel in the United States interference proceeding. It purported to cover only the priority which necessarily would be tried out under different rules and laws than maintained in the interference at bar and was intended as a settlement only of Canadian controversies. Clearly, adjudication there could not be res adjudicata of the issue here, and we think that, in order to deprive the first inventor of the advantage of his invention on account of a written concession, it should be clear that the concession was meant to and did fully cover the particular rights involved. The record shows that Winsor reluctantly, upon Hodder's advice, signed the concession for the Canadian priority upon the full understanding that this would not affect his interests (certainly not his United States interests) and that he would continue to get his royalties. No authority has been cited, and we know of none, which justifies the conclusion that a concession of priority of invention in a foreign country can form any basis for the application of

estoppel against a party to an interference proceeding in the United States Patent Office.

As to the second ground of estoppel, it is too clear to require extended argument that the doctrines in the cases of Mason v. Hepburn, 13 App. D. C. 86, and Chapman et al. v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491, do not apply, since the question of "secretion or forgetfulness," which was essential in the doctrine of the first case, is absent, and the two-year period, forming the basis of the doctrine in the second case, is also absent. We are of the opinion that whatever delay is shown by the record, on the part of Winsor, in claiming what he had clearly invented, cannot, under any of the decided cases, form the basis of estoppel in this interference proceeding. With whatever rights appellant may have in equity in event its right to manufacture and sell is challenged in an equity forum we are not here concerned. There are often distinctions between the questions presented in an equity action based upon the doctrine of estoppel and the doctrine akin to equitable estoppel which is infrequently applied in interference proceedings. The patent statutes were enacted for the benefit of the first inventor, and the courts have been reluctant to deprive him of his rewards, and have done so only when "gross inequities clearly threaten to defeat the spirit and the purposes of the patent laws. * * *" Severson v. Olson, 64 F.(2d) 694, 698, 20 C. C. P. A. (Patents) 946, 952.

In Sachs v. Wadsworth, 48 F.(2d) 928, 930, 18 C. C. P. A. (Patents) 1284, we said there what has often been said before: "Since estoppels preclude a party from showing the truth, they are not favored and should not be applied in any case where the facts do not clearly justify their application. Miller v. Hayman, 46 F.(2d) 188, 18 C. C. P. A. (Patents) 848."

Appellant's third contention with relation to estoppel is not very vigorously pressed here, but is to the effect that estoppel applies to Winsor on account of his failure to copy claims from the Ronning patent, No. 1,658,354 within two years of its issue date. The application for said patent 1,658,354 was filed April 9, 1927, and was divided from Ronning's earlier application filed March 12, 1921, which matured into patent 1,706,256, issued March 19, 1929, for

which reissue is now sought. It is sufficient to say that the Patent Office tribunals concluded that the counts in interference here and the subject-matter of said patent 1,658,-354 related to patentably distinct subject-matter, and this position has not been shown to be erroneous. Concerning this ground of estoppel, the Board said: "A third ground of estoppel is raised but is not so vigorously pressed as are the others above discussed. The third ground is based upon Winsor's failure to copy claims from Ronning patent 1,658,354 within two years of its issue date. As pointed out by the examiner, the counts of this interference presumptively and actually relate to patentably distinct subject matter. Whatever the effect of failing to make claims from patent 1,658,354 may be with respect to claims in that patent or claims which do not patentably distinguish therefrom, we think it clear that the estoppel does not extend to the claims in issue."

Upon this record, and as the issue is presented to us, we find no error in this conclusion on the part of the Board.

Appellant in this court also raised, but did not press, the subject of public use being a bar to Winsor under certain circumstances. It is doubtful if any of appellant's reasons of appeal cover this question, but it is clear to us that, in this character of proceeding, we cannot concern ourselves with this phase of patent procedure. Stern et al. v. Schroeder et al., 36 F.(2d) 518, 17 C. C. P. A. (Patents) 690, 696; Derby v. Whitworth, 62 F.(2d) 368, 20 C. C. P. A. (Patents) 791, 796; Hendrickson et al. v. Ronning et al., 76 F.(2d) 137, 22 C. C. P. A. (Patents) ——. Proceedings with which we are not here concerned take care of that question, and we do not regard it as being one upon which we need express any opinion here.

Since we agree with the tribunals below that Winsor was the first to conceive and first to reduce to practice the invention involved in the counts at bar, and since, under the circumstances of this case, Winsor is not estopped from claiming the invention, we conclude that priority of invention in the subject-matter of the issue was properly awarded to Winsor, the junior party, and the decision of the Board of Appeals is affirmed.

Affirmed.