## NEW WRINKLE, Inc., et al. v. COE, Commissioner of Patents.
### No. 66905.

District Court of the United States for the District of Columbia.
Jan. 17, 1940.

The corporate plaintiff is the owner by assignment of the entire right, title and interest in and to the application, numbered 759,552, for patent filed by the individual plaintiffs December 28, 1934.

The patent sought is for "Improvement in Imitation Leather Varnishes and Enamels on Metal Films."

At the trial and hearing of this case the plaintiffs offered no evidence other than the file wrapper, duly certified, containing the proceedings before the Patent Office. They contend that the decisions of the Patent Office tribunals are erroneous and call upon this court to re-examine or review them. In other words, the relief sought here is a holding that, on the record before it, the Patent Office did not reach the proper conclusion. This is exactly the relief that would be sought by an appeal to the United States Court of Customs and Patent Appeals.

Ever since Butterworth v. Hoe, Butterworth v. United States, 112 U.S. 50, 5 S.Ct. 25, 28 L.Ed. 656, it has been held that the proceeding under R.S. § 4915 is not a technical appeal from the Patent Office but is a proceeding de novo.

Prior to April 1, 1929, the Court of Appeals of the District of Columbia had jurisdiction to entertain appeals from the Patent Office. This jurisdiction is now vested in the United States Court of Customs and Patent Appeals. 28 U.S.C.A. § 309a.

Congress was prompted to transfer jurisdiction to the United States Court of Customs and Patent Appeals, for the following reason: "The need for this legislation is due to the fact that the Court of Appeals of the District of Columbia, consisting of three judges, has a very crowded docket and is considerably behind in its work while the United States Court of Customs Appeals, consisting of five judges, has a relatively light docket." Senate Report No. 784, 70th Congress, 1st Session.

To the same effect see House Report No. 874, id.

Since the enactment of this legislation, the personnel of the United States Court of Appeals for the District of Columbia has been increased to six judges and that of this court to twelve, due to the increase. of business before these courts.

If, in the guise of a proceeding in equity under R.S. § 4915, the jurisdiction of this court may be invoked to review the record

H. A. Toulmin and H. A. Toulmin, Jr., both of Dayton, Ohio (John M. Mason, of Washington, D. C., of counsel), for plaintiffs.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for defendant Commissioner of Patents.

LUHRING, Associate Justice.

The bill of complaint seeks the issuance of a patent pursuant to Section 4915, R.S., 35 U.S.C.A. § 63.

of the Patent Office and exercise appellate jurisdiction over that office, the purpose of Congress will be thwarted when appeal is taken from our decision to the United States Court of Appeals for the District of Columbia. In such case instead of reducing appeals from the Patent Office they will be increased.

It is true that the defeated applicant for a patent has an election to proceed either by way of appeal to the United States Court of Customs and Patent Appeals or by bill in equity in this court. It would seem, however, that this election should be had only in cases where the applicant desires to present evidence to the equity court according to the rules of procedure of that court. When no such evidence is available or when the applicant relies solely on the record before the Patent Office, there should be an appeal to the United States Court of Customs and Patent Appeals.

The record presented to this court consists of the sworn petition for letters patent, the specifications, including a number of examples and formulaes, drawings, and fourteen claims; also the office actions of the examiner, citing references to prior art, the responses thereto, and the final rejection of the claims.

The record further discloses that appeal was taken from the action of the examiner in finally rejecting the claims on the grounds:

"1. The examiner erred in rejecting any or all of the claims standing in the application upon references, and for the reasons of record.

"2. The examiner erred in not allowing any or all the claims of the application."

The statement of the examiner follows as does also the brief of the applicant on appeal. The decision of the Board of Appeals, October 8, 1937, affirming the decision of the examiner is in the record, together with notice of suit under Section 4915, R.S., dated April 7, 1938.

The time within which an applicant may appeal from a decision of the Patent Office is uniformly set at 40 days, exclusive of Sundays and holidays, after the decision of the Board of Appeals. This period is fixed by Rule 149 of the Rules of Practice in the United States Patent Office. After the expiration of that time, the applicant has no right of appeal. So here the plaintiff lost his right of appeal to the United States Court of Customs and Patent Appeals because of his failure to give notice of appeal to the Commissioner and file in the Patent Office his reasons of appeal in writing within the time allowed by Rule 149.

The applicant "may have remedy by bill in equity, if filed within six months" after the decision of the Board of Appeals. 35 U.S.C.A. § 63. The plaintiff filed his bill of complaint herein on the last day of the six months' period. This complaint is based on the record made in the Patent Office, and at the hearing, as we have seen, that record and that record only was offered and read in evidence. Technically and accurately stated, the proceeding here is an appeal from the decision of the Board of Appeals of the Patent Office.

The invention consists in the application of an imitation leather, wrinkled finish to a metal foil, such as tin foil, the effect of which is to strengthen the metal foil base, yet leave it sufficiently weak to be used as a wrapping or for label purposes; and at the same time, carry a wrinkled finish of the enamel that gives the attractive appearance of leather with a corrugated outer surface.

The claims in issue are numbered 1 to 14 inclusive. Claim 1 is illustrative and reads as follows: "1. A new article of manufacture comprising a structurally weak metal film, and a flexible film adherent to metal adapted on baking to shrink into a wrinkled surface as an imitation leather enamel."

The claims were finally rejected by the examiner as unpatentable over the prior art as exemplified by the following patents:

| Koskul, | 233,775, | October 26, 1880, |
| Phillippi | 1,878,316, | September, 20, 1932, |
| Kilchling, | 1,944,323, | January 23, 1934, |
| Root, | 1,950,417, | March 13, 1934, |
| Root, | 1,976,191, | October 9, 1934. |

The claims differ from each other principally in the specific composition of the coating material. In the view we take, it is not necessary to consider the particular coating compositions recited by the various claims. They are all old, as fully pointed out in the examiner's statement.

The only question presented here is whether or not it required invention to provide a wrinkled varnish or enamel, imitative of leather, on a thin metal foil. The court is of opinion that it did not and that

the claims in suit are unpatentable first over Koskul or Kilchling alone, secondly over either of the Root patents alone, and thirdly over Koskul or Kilchling in view of Phillippi or either Root patent.

Both Koskul and Kilchling disclose the coating of thin metal foil with varnish or enamel. Kilchling specifies the thickness of the foil as .009 to .02mm. which is exactly the range given in plaintiff's application, and also states that the purpose of the coating is to strengthen the foil. Kilchling states that the finished product may be "stamped or decorated in various ways" (page 1, lines 107 to 109) and Koskul says that his foil "may have lines raised in relief" (page 1, line 25). These descriptions seem clearly to contemplate the corrugation of the foil and coating as a whole.

The claims in suit are broad enough to be readable on material in which the foil as well as the coating is corrugated. With the exception of claim 1 the claims merely state that the coating has a corrugated outer surface. Nothing is said as to the shape of the inner surface or of the foil itself. Manifestly, if the coated material of Koskul or Kilchling were corrugated the finish would have a corrugated outer surface. It is true that applicant's alleged invention relates to the corrugation of the surface only, while leaving the foil smooth, but this idea is not expressed in the claims. Claim 1 states that the film is adapted to shrink into a wrinkled surface, but does not state that either the film or the foil was smooth prior to shrinking. The material of Koskul or Kilchling will shrink on baking and, if the entire sheet is wrinkled as suggested, the coating when shrunk, will have a wrinkled form.

The claims also appear to be fully met by either of the Root patents which clearly disclose the production of a wrinkled surface in a varnish or enamel coating applied to a smoot backing. Root patent, No. 1,950,417, suggests the use of the coating on flexible articles such as paper and cloth and, if it could be successfully applied to these, there seems to be no reason for supposing that it could not be applied to metal foil as well.

Moreover, Root patent, No. 1,950,417, refers (page 4, line 135) to the use of the coating in connection with metal stamping. Since stamping is ordinarily applied only to thin metal, this would seem to contemplate use of the coating with a metal material such as foil. Further, in Root patent, No. 1,976,191, (page 10, lines 127 et seq.) it is said that the coating composition may be applied to "sheet tin or tinned sheet iron" to "yield a sheet supporting surface." The statement that the coating provides a sheet supporting surface shows that the sheet tin or tinned sheet iron itself must be thin, since a varnish or enamel would not provide any considerable degree of support for a thick sheet.

Each of the Root patents suggests the application of a wrinkling coating to flexible materials and to thin metal sheets. This is a fair disclosure of the idea of applying such a coating to metal foil. Root patent, No. 1,950,417, discloses air drying (page 3, lines 75 and 76) and this satisfies the requirements of the claims. There is nothing in the claims which would preclude baking after the air drying.

Finally, even if it be considered that Koskul and Kilchling do not disclose the corrugated outer surface and that the Root patents do not suggest the application of the wrinkled coating material to metal foil, the claims define no invention over an obvious combination of these patents with each other or with Phillippi. Since Koskul and Kilchling disclose the application of a strengthening layer of varnish or enamel to thin metal foil there is no invention in using some other old varnish or enamel, unless an unexpected result is produced. The use of the coating composition of Phillippi or of either Root patent on metal foil would produce no such result but would merely add the known strengthening and decorative properties of the coating to the known protective quality of the foil.

It is to be noted that claims 1, 2, 4 to 6 and 13 call for a weak metal film or foil. The remaining claims are not so limited but would be met by a heavy lead foil, which would clearly present none of the alleged difficulties in coating that are offered by the weak foil.

 The plaintiff has merely made an obvious substitution of one well known coating material for another. The claims are so broad in terms as to be fully anticipated by Koskul, Kilchling or either of the Root patents alone. Such is the judgment of the Patent Office also, and, in a proceeding such as this, it is entitled to great weight. Abbott et al. v. Coe, —— App.D.C. ——, 109 F.2d 449, decided November 20, 1939.

The bill will be dismissed, and counsel will prepare and submit formal findings of fact and conclusions of law accordingly.