**SINKO TOOL & MANUFACTURING CO. v.
AUTOMATIC DEVICES
CORPORATION.**

No. 227.

Circuit Court of Appeals, Second Circuit.

May 10, 1943.

---

James T. Kline, of Bridgeport, Conn., for appellant.

Bernard A. Schroeder, of Chicago, Ill., (W. Lee Helms, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The defendant appeals from a judgment in an action brought under § 63, Title 35 U.S.C.A., to establish the plaintiff's right "to receive a patent for his invention." The only question is as to the relative priority of two inventions: the plaintiff's concededly conceived by one, Sinko, in September, 1933 (an application for a patent on which was filed on April 25, 1938); the defendant's, conceived by one, Johnson, at some unspecified time (an application for a patent on which was filed on January 17, 1936). Since Sinko's date of conception was earlier than Johnson's, the issue is narrowed to whether Sinko's invention was "reduced to practice" on October 16, 1933; or whether his date of invention must be limited to the filing date: April 25, 1938. On November 2, 1938, an interference was declared between Johnson, Sinko, and a third party, Ashton, upon two claims. The examiner decided this proceeding in Johnson's favor and the Board of Appeals affirmed his decision on January 21, 1942. On August 24, 1940, a second interference was declared—this time only between Johnson and Sinko—upon a claim, substantially indistinguishable from the second claim in the first interference. This the Board of Interference Examiners decided in Johnson's favor on September 8, 1941. The action is to reverse both awards and to declare Sinko entitled to a patent.

The application is for an automobile cigar lighter of the kind in which the lighting plug fits into a socket in the dash-board from which, when heated, it can be removed without attachment. The plug is of two telescoping parts; the upper part or "knob," contains a pair of thermostatic fingers, the lower part, a resistance coil and a "beveled abutment"; the two parts are normally kept in extended position by a

spring. When the plug is in place the resistance coil is in electrical connection with the socket, although no circuit is as yet established. In order to heat the coil the "knob" is pressed down against the spring until the thermostatic fingers grasp and hold the "beveled abutment," so completing a circuit through the resistance coil. After the current has heated the coil, the radiated and conducted heat opens the thermostatic fingers which then release the "beveled abutment," and break the circuit, and the spring snaps the "knob" back to its normal or extended position. The plug can then be taken out and used while the coil is hot. Sinko tested this heater on October 16, 1933, and found that the fingers would properly release the "beveled abutment" and that the spring would snap the "knob" back. He and his assistants assumed that that was test enough, and did nothing more about it until he filed his application. The examiners of the Patent Office—original and appellate—all held that by stopping where he did Sinko had failed to "reduce to practice" his invention. This for two reasons. First, the clearance between the spring and the thermostatic fingers was small, and "the spring which urges the beveled abutment away from the thermostatic contacts is such that if at any time the spring engages or touches the thermostatic contacts, current will be fed to the heating element regardless of open circuit condition between the thermostatic fingers and the beveled abutment." The resistance coil would in that event continue to heat and might burn out; and by taking out the plug as soon as it snapped back, Sinko did not check against the possibility of such a short circuit. Second, he had never tried the lighter out in an automobile upon the road, without which it was impossible to know whether it would respond in actual service.

The parties were involved in other litigation. The defendant sued the plaintiff for the infringement of three patents by making and selling the cigar lighter, now the subject of the action at bar. One of these patents was No. 2,140,311, issued to Joseph H. Cohen on December 13, 1938, upon an application filed on July 23, 1932; the other was No. 2,129,374, issued to Arthur A. Johnson on September 6, 1938, upon an application filed on August 17, 1934. One of the plaintiff's defenses in that suit was that Sinko was the prior inventor of the disclosure in both Cohen's and Johnson's patents; and in support of this defense it put in substantially the same evidence as to Sinko's "reduction to practice" as was taken in the Patent Office on the interference proceedings. The district judge in the infringement action held that both Cohen's and Johnson's disclosures were not patentable advances over the prior art, and therefore did not find it necessary to pass upon whether Sinko's date of invention was October 16, 1933, or April 25, 1938, his filing date. Upon appeal the Seventh Circuit held the claims in suit of those two patents invalid, but for another reason. It declared that Cohen's invention was made up of three factors: (1.) a longitudinal, as opposed to a rotary, movement of the plug; (2.) the inclusion of the thermostatic element in the socket or the plug; (3.) an auxiliary contact for manual operation of the plug. The last it held plainly no invention; the first it held not to be infringed; the second it found not to have appeared in Cohen's patent until after Sinko had "developed his devise in September, 1933, and it was proven successful by a test on October 16, 1933." It further held that "what we have said with respect to the Cohen patent in suit is quite applicable to Johnson. Furthermore, the date of Johnson's application, which is his effective date, was long subsequent to defendant's disclosure." Automatic Devices Corporation v. Sinko Tool & Manufacturing Co., 112 F.2d 335, 342.

In both interference proceedings Sinko moved for summary judgment at the opening on the ground that this finding of the Seventh Circuit in the infringing suit as to his test of the invention in suit was an estoppel which forbade any reopening of the subject. The examiners overruled this motion and Sinko did not renew it at the close of the evidence, though the opinions of both the Board of Interference Examiners and of the Board of Appeals discuss the point. The district judge in the case at bar held that the finding was an estoppel in the plaintiff's favor on the issue of "reduction to practice," since it was at least an alternate ground on which the court had held invalid the claims of Cohen's and Johnson's patents. Two other points raised by the defendant he also overruled: one, that an action brought under § 63 of Title 35 U.S.C.A., cannot be used merely as an appeal from the refusal of a patent by the Patent Office; but that the applicant must introduce some new evidence, or be limited to an appeal to the Court of Customs and Patent Appeals. The

second point was that by failing at the close of all the evidence to renew his motion that the finding was an estoppel, Sinko abandoned the point.

■ Were this an ordinary adversary action between the parties, we should unhesitatingly agree with the disposition of the cause by the district court. The plaintiff invokes the finding in the infringement action, not as a merger or a bar, in which event it would be necessary for this action to be upon the same "cause of action" as the first, but as an estoppel. In that event no more is necessary than that it should have been necessary to the judgment there entered, or at least should have been one of several findings, considered by the court as alternate grounds for its judgment. Tait v. Western Maryland Ry. Co., 289 U.S. 620, 623–625, 53 S.Ct. 706, 77 L.Ed. 1405; Restatement of Judgments § 68. That was true of the finding in question; one of the reasons, at least, for holding invalid all the claims in suit of both Cohen and Johnson was that Sinko had been a prior inventor, because his test of October 16, 1933, had proved that the lighter was "successful," which was equivalent to saying that it was a sufficient "reduction to practice."

■ It has, however, apparently for many years been the practice of the Patent Office to refuse to recognize such findings as conclusive upon the issue of priority between inventors in interference proceedings. The theory is that the statute charges the Office and the Office alone with the duty of deciding which of two applicants is in fact the prior inventor, and that no decision of a court can divest it of that responsibility. McBride v. Kemp, 109 O.G. 1069. As much was at least assumed in Pyrene-Minimax Corporation v. Palmer, 67 App.D.C. 33, 89 F.2d 505, 510. On the other hand the Court of Customs and Patent Appeals has at times appeared to assume that such findings would be valid estoppels (In re Laughlin, 48 F.2d 921, 18 C.C.P.A., Patents, 1239), and the Court of Appeals of the District denied a patent to a party who had been held a subsequent inventor in an infringement suit. In re Drawbaugh, 9 App.D.C. 219, 255–258. So also at times estoppels in pais have been discussed as though they might foreclose an applicant in interference. Trumbull v. Kirschbraun, 67 F.2d 974, 21 C.C.P.A.(Patents) 758, Ronning Machinery Co. v. Winsor, 76 F.2d 392, 396, 397, 22 C.C.P.A., Patents, 1107. It is one thing to hold that a party to an interference proceeding may have lost his right to a patent because of some legal transaction: e. g. a license, a contract, a judgment, which concluded him as against another party; and a very different matter to hold that he may take advantage of such a transaction to procure a patent for an invention to which the facts do not otherwise entitle him. We need say nothing about the first situation: as for instance, whether Johnson would not be precluded from receiving a patent here: but we are satisfied that Sinko's application cannot escape scrutiny on the issue of first invention, unaided by any estoppel.

■ It is well settled law that in actions brought under § 63, Title 35 U.S.C.A., the issue is larger than of priority only; the plaintiff must show that he is "entitled" to a patent, and any ground which proves that he is not, will defeat the suit. Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502. Hence if the defendant at bar could show that the Sinko invention did not deserve a patent, it would win. But that is not the situation; at any rate we are to assume that there is an invention proper to be patented. Even so, it might be the prior invention of a third person not a party to the action; and, if it were, again that would be a good defense here. Gold v. Gold, 7 Cir., 237 F. 84, 86; Bird v. Elaborated Roofing Co., 2 Cir., 256 F. 366, 371, 372. The fact that a patent should be granted does not mean that any party to the action should have it. It can be plausibly argued, however, that, when, as here, there is concededly an invention fit for patenting, and when the choice between prior inventors is narrowed to those who are parties to the interference, whatever is conclusive between them inter partes, should determine the patentee. That is not true, however: the interference is only a step in the application, and the application itself is a proceeding to secure a monopoly, not against other parties to the interference, but against the public at large. Congress has granted such monopolies only when those facts actually exist which it has specified; and one of these is that the patentee shall be the first inventor. Therefore, although transactions inter partes— such as contracts, judgments or the like— may conceivably bar an applicant, they cannot be a substitute for prior invention as against the public, for the public is not a party to them: in particular it cannot be

estopped by a judgment between the parties to an interference. That this reasoning must be right at once appears, if we substitute for a judgment an agreement conceding priority as between two inventors. No matter how solemn and conclusive this might be, or how completely it should cover every possible legal transaction—including an interference proceeding—the Patent Office would certainly not make it the basis of issuing a patent, even though it might make it the basis of denying one. The judgment of a court is however conclusive only in the same way; it decides nothing save as it prevents the parties from reopening the dispute again, when only their interests are at stake.

This reasoning is further confirmed by considering the consequences of its opposite. Suppose that the Patent Office, although rightly of opinion that Sinko was not the first inventor and Johnson was, was constrained by the finding to award a patent to Sinko. Since, as we have said, the public would not be estopped by that finding, anyone but the defendant, when sued as an infringer, would be free to prove that Johnson was the first inventor. The grant of such a patent would be a fraud; it would not represent the conclusion of the Office that the patentee was in fact the first inventor. On the contrary it would falsely represent Sinko as the first inventor contrary to its belief; and would merely impose upon the art the burden of establishing the falsity of a statement known by the Office to be false when uttered, and the truth of a fact which should have precluded the issuance of the patent.

■ The judgment must therefore be reversed, but the action may be retried, for the defendant's objection is without substance that it cannot be used as a bare appeal from the decision of the Patent Office, and will lie only in cases where the plaintiff offers new evidence. The statute declares that "the record in the Patent Office shall be admitted * * * without prejudice, however, to the right of the parties to take further testimony"; clearly meaning that the plaintiff need not introduce any further evidence, though he may do so if he wishes. The contrary notion has arisen from a dictum of Luhring, J. in New Wrin-

kle, Inc., v. Coe, D.C., 31 F.Supp. 415, which appears to have been made the basis of a decision in Rettmeyer v. Coe, 44 U.S. P.Q. 640. The argument is that the action must not be allowed indirectly to impose appeals upon the Court of Appeals of the District, because all appeals must be heard by the Court of Customs and Patent Appeals. It is, however, entirely apparent that when in 1929 Congress vested in the Court of Customs and Patent Appeals the direct appellate jurisdiction of the Court of Appeals of the District (Act March 2, 1929, 45 Stat. 1476), it could have had no thought of changing the character of actions previously authorized in district courts. Section 4915 of the Revised Statutes had already been amended in 1927, 44 St. L. p. 1337, 35 U.S.C.A. § 63, by the language just quoted so as to allow plaintiffs in those actions to put in new evidence or not as they chose. For two years the Court of Appeals of the District had therefore a double appellate jurisdiction: one, direct from the Board of Appeals; the other, from judgments in actions in the district court. During that time there was certainly no warrant for saying that the action could not be brought merely to review a proceeding in the Patent Office. But all that Congress did in 1929 was to vest the first of these appellate jurisdictions of the Court of Appeals of the District in the Court of Customs and Patent Appeals, and it is an altogether unwarranted inference from that that it intended any change in the character of the action: an action, not confined to the District of Columbia but co-extensive with the Union.

■ We have treated the issue of estoppel as open in the action, in spite of the plaintiff's failure at the close of the evidence in the interference proceedings to renew its motions made at the outset. That failure did not abandon ("waive") the point; no party, being once overruled, need repeat an objection. Indeed, the Board of Interference Examiners treated the question as still open before them, although the Board of Appeals did dismiss the appeal. The order of dismissal we reverse, and affirm the Board on the merits upon the issue of estoppel.

Judgment reversed; cause remanded.