## DRUM v. TURNER.†

(Circuit Court of Appeals, Eighth Circuit.   December 10, 1914.)

### No. 4165.

*(Syllabus by the Court.)*

1. PATENTS ☞168—CLAIMS—ACQUIESCENCE IN REJECTION—ESTOPPEL.

While one who acquiesces in the rejection of his claim on references is estopped from maintaining that an amended claim covers the combinations and devices shown in those references, or that it has the breadth of the rejected claim, he is not estopped from claiming and securing by an amended claim every improvement and combination he has invented that was not disclosed by the references on which his original claim was rejected.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½, 244; Dec. Dig. ☞168.

Amendment of application for patent, see notes to Cleveland Foundry Co. v. Detroit Vapor Stove Co., 68 C. C. A. 239; Hestonville, M. & F. Passenger Ry. Co. v. McDuffee, 109 C. C. A. 613.]

2. PATENTS ☞168—CLAIMS—ACQUIESCENCE IN REJECTION—ESTOPPEL.

Acquiescence in the rejection of a claim for a beamless "flooring composed of concrete having metallic network inclosed therein" on the citation of the patent to Seeley, No. 467,141, for various forms of beams to support a floor and the substitution of a claim for a beamless flooring consisting of concrete having metallic network consisting of strips of wire netting inclosed therein, did not estop the patentee from maintaining that a flooring consisting of concrete having metallic network consisting of belts of small iron rods from three-eighths to one-half an inch in diameter inclosed therein disposed and operating in the same way and accomplishing the same results as the strips of wire netting of the patentee was an infringement of his patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½, 244; Dec. Dig. ☞168.]

3. PATENTS ☞91—ANTICIPATION—PROOF.

The burden is on him who alleges priority of discovery of an invention which has been patented to another to establish that fact.   And where the claim of such priority is first made many years after a patent issued, and it is supported by oral evidence only, the proof must be beyond a reasonable doubt.

Where the evidence is principally oral, accompanied by sketches or writings, the genuineness and dates of which are dependent upon oral testimony only, the proof must be at least clear, convincing, and satisfactory.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 121–123; Dec. Dig. ☞91.]

4. PATENTS ☞283, 289—CONTINUING TRESPASSES—DEFENSE—LACHES.

Delay and silence during the life of a patent, unaccompanied by such acts or omissions to act by the owner as amount to inducing deceit and thereby to an equitable estoppel, will not deprive such owner of his right to recover for an infringement of his patent.

It is no defense to a suit for an injunction and an accounting on account of the continuing trespasses of an infringer that the latter has long been trespassing on the rights of the owner with impunity.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–450, 452, 467–469; Dec. Dig. ☞283, 289.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
† Rehearing denied March 31, 1915.

5. PATENTS ☞328—VALIDITY—INFRINGEMENT.
    Claims 1, 3, and 4 of letters patent No. 698,542, issued April 29, 1902, to Norcross for a metallic-concrete flooring without supporting beams, are valid and are infringed by floorings constructed in the way described in letters patent Nos. 985,119 and 1,003,384.

Appeal from the District Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Suit by John L. Drum against Claude A. P. Turner. From decree for defendant (209 Fed. 854), plaintiff appeals. Reversed and remanded, with instructions to render decree for plaintiff.

Edward Rector, of Chicago, Ill., and Amasa C. Paul, of Minneapolis, Minn., for appellant.

Charles J. Williamson, of Washington, D. C., for appellee.

Before SANBORN, Circuit Judge, and TRIEBER and REED, District Judges.

SANBORN, Circuit Judge. This appeal questions a decree which dismissed a complaint of the infringement of letters patent No. 698,-542, issued April 29, 1902, to Orlando W. Norcross, for a metallic and concrete flooring by a flooring made substantially in the manner described by the specifications of letters patent No. 985,119 and No. 1,003,384, issued to Claude A. P. Turner, February 21, 1911, and September 12, 1911, respectively. The grounds of the dismissal were that Norcross had so limited his claims by his acquiescence in the rejection of his earlier claims by the examiner on the citation of the patent to Seeley No. 467,141, issued January 12, 1892, that they were not infringed.

The purpose of the invention patented to Norcross was to make in one panel or piece, extending throughout a building however large, a monolithic flooring composed of a metallic network embedded in concrete which would sustain itself and its load upon separated posts without the use of girders, floor beams, or other horizontal supports. The principle or mode of operation of the device by which this object was attained was to imbed in a concrete flooring a metallic network consisting of strips of heavy wire netting which were laid lengthwise of the building, crosswise of the building, and diagonally over the tops of and supported by the columns, so that a strip lengthwise, a strip crosswise, and a strip laid diagonally would lie on or under each other over the top of each post in cobhouse fashion and leave only small triangular spaces in any rectangular space between four posts free from this metallic network. In his specification Norcross wrote:

"It has heretofore been thought necessary to either rest or hang the floors upon girders or floor beams. In the larger type of buildings heavy rolled iron girders are now universally employed and associated with narrower floor beams constituting in effect a separate floor section. * * * In a flooring constructed according to my invention I propose to entirely dispense with all floor beams, girders, joists, or other horizontal supports providing a construction in which a floor is directly supported upon separated posts. * * * I am aware that numerous changes may be made in practicing my invention by those who are skilled in the art without departing from the

scope thereof as expressed in the claims. I do not wish, therefore, to be limited to the constructions I have herein shown and described."

At the time Norcross wrote and filed this specification, it was true that in the larger type of buildings heavy iron girders and narrower floor beams were deemed necessary and were generally used. It is also true that a flooring constructed in accordance with his specification and claims is capable of supporting itself and its reasonable load upon separated posts in a single panel or piece throughout large buildings without girders, floor beams, or other horizontal supports, and that the principle or mode of operation of his invention and the use of the means he has described, or their equivalents, have gone into use in such buildings very generally, although they had never been used therein before. The claims of his patent which are to be considered in this case are:

"(1) The combination of separated posts or supports, and a flooring consisting of metallic network formed by strips of wire netting inclosed therein, so as to radiate from the posts or supports on which the floor rests.

"(2) A flooring resting on separated supports, and consisting of concrete with metallic network so arranged therein that the amount of metal will be greatest at the points where the greatest tensile and shearing strains are to be supported.

"(3) A flooring resting on separated posts, and consisting of metallic network formed by strips of wire netting laid from post to post to cross each other in cobhouse fashion, and concrete inclosing the metallic network.

"(4) A flooring resting on separated posts, and consisting of metallic network formed by strips of wire netting laid from post to post, and on the diagonals of the figures outlined by the posts, and concrete inclosing the metallic network."

The principle or method of operation of the construction of the floors which are alleged to infringe the patent of Norcross is disclosed in the drawings and specifications of Turner's patents Nos. 985,119 and 1,003,384. Those drawings and specifications describe much that has been found to be immaterial to the issue here, the reinforcement of vertical bars of the columns or posts, the enlargement of the capitals or heads of the posts, the construction and use of cantilever heads thereon, and the method of attaching and rendering integral the heads of the columns and the metallic-concrete flooring which the columns support, and these things are here dismissed.

What it is important to know and consider is that Turner imbeds in his concrete flooring a metallic network consisting of belts of small iron rods from three-eighths to one-half an inch in diameter laid lengthwise of the building, cross-wise of the building, and diagonally so that on the top of each post there lie one of these belts extending lengthwise, one of them extending crosswise, and one of them extending diagonally in cobhouse fashion, so that the concrete flooring is supported by these belts of rods and the floor itself by the posts alone without beams or girders, and so that these belts of rods cover practically all the space between the posts. These belts of small iron rods differ from the strips of wire netting of Norcross in that they are made of the rods from three-eighths to one-half an inch in diameter, while Norcross' strips are made of heavy wire netting three-eighths of an inch in diameter, in that the belts are wider than the strips of wire netting, and in that at the places where they lie over the posts

they are imbedded in the upper, while Norcross' strips are imbedded in the lower, part of the concrete flooring. But they support the flooring and dispense with girders and beams by the use of the same principle by means similar, if not equivalent, to the strips of Norcross disposed in the same way.

[1, 2] In his specification first presented to the Patent Office Norcross claimed:

"(1) A flooring consisting of concrete having metallic network inclosed therein so as to radiate from the posts on which the flooring rests."

His second and third claims were for metallic network inclosed in a flooring consisting of concrete, and he also made what are now claims 2, 3, and 4 of his patent. The examiner rejected the first three claims on the ground that they were met by the patent to Seeley No. 467,141, issued January 12, 1892. Norcross then amended his specification by substituting claim 1 of the patent for the three rejected claims, and replied:

"The patent of record to Seeley shows a construction in which rolled iron plates and beams are inclosed in concrete. One especial object of the applicant's invention is to dispense with the use of rolled iron of all forms employing wire netting in place thereof."

Thereupon the present claim 1 was allowed, and claims 2, 3, and 4 passed to patent in their original form. Did this action of Norcross estop him from claiming that the defendant's construction is an infringement of the claims of his patent? The rule by which this question must be answered is that a patentee who acquiesces in the rejection of his claim on a reference cited in the Patent Office and accepts a patent on an amended claim is thereby estopped from maintaining that the latter claim covers the device shown in the reference and that it has the breadth of the original claim. But one who acquiesces in the rejection of his claim because it is said to be anticipated by another patent or reference is not thereby estopped from claiming and securing by an amended claim every known and useful improvement that is not described in such reference. National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 714, 45 C. C. A. 544, 565; J. L. Owens Co. v. Twin City Separator Co., 168 Fed. 259, 268, 93 C. C. A. 561, 570; O'Brien-Worthen Co. v. Stempel, 209 Fed. 847, 851, 128 C. C. A. 53; Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 215 Fed. 362, 373, 131 C. C. A. 504.

The patent to Seeley describes numerous arrangements of beams to support floors. In one arrangement he makes the spaces between the columns narrow and uses beams disposed at right angles to each other so that they inclose a substantially square space, places other beams diagonally across this rectangle, and secures the ends of all the beams to the respective columns surrounding this rectangle which they reach. Other arrangements of the beams which he shows were to secure a ring to each of the columns and to attach the ends of the beams forming each small rectangle to the rings of the columns they respectively reached and to substitute for the diagonal beams others in various forms, always retaining the direct beams forming the small rectangles. The patent discloses plans for multiplying the number of beams requi-

site to support a floor, but no suggestion of the construction of a floor supported upon posts without beams. The specification contains the statement that the spaces between the beams of the floor frame which consist of these various beams may be filled with tile cement, etc. With this patent to Seeley and the various claims of Norcross before us, it is plain that in order to reject the first three original claims of Norcross and to sustain, as he did, the first four claims of the patent to Norcross, the examiner must have held that a claim for "a flooring consisting of concrete having metallic network inclosed therein so as to radiate from the posts on which the flooring rests," in the way described by Norcross, was broad enough to include the network of beams which might be made of iron, devised by Seeley to support a floor, but that Norcross had invented and was entitled to a patent for the construction of a flooring consisting of concrete and of metallic network formed by strips of wire netting inclosed therein so as to radiate from and be supported by separate posts without girders or beams. Norcross, and his assignee, are estopped by his acquiescence in the rejection of the first three original claims of Norcross and the substitution of the first claim of his patent from questioning this decision. But the extent of its effect is to deprive them of a right to a monopoly of the device disclosed by the patent to Seeley and its mechanical equivalents and to grant them a monopoly of the device secured by the patent to Norcross and all its mechanical equivalents that are not the mechanical equivalents of Seeley's floor beams, and the question in this case in the last analysis is whether Turner's flooring is the mechanical equivalent of Seeley's beamed floor frame or of Norcross' concrete-metallic floor.

An inspection of the drawings and a study of the specifications of the patent to Seeley, the patent to Norcross, and the two patents to Turner leave no doubt of the true answer to this question. The purpose of Seeley's invention was to provide beams to support a floor. The purpose of the invention of Norcross and of the device of Turner was to provide a monolithic single panel floor composed of concrete wherein large wire or small rods were inclosed which would support itself and its load on separate columns without beams or horizontal supports of any kind. Seeley's invention never accomplished, and never could accomplish, the purpose of Norcross or of Turner. The invention of Norcross attained it by the use of strips of heavy wire netting inclosed in concrete extending lengthwise of the building, crosswise of the building and diagonally over the tops of supporting posts, and Turner by the use of belts of small iron rods inclosed in concrete extending in the same way over the tops of sustaining posts. The monolithic flooring of Turner in which were imbedded the belts of small iron rods in order to dispense with the use of beams and girders to support the floor was the plain mechanical equivalent of the flooring of Norcross in which were inclosed the strips of heavy wire netting for the same purpose because it appropriated the principle, the mode of operation of the latter, and attained the same result in the same way by equivalent mechanical means. The result is that the plaintiff was not estopped by the acquiescence of Norcross in the rejection of the first

three of his original claims and the substitution of the first claim of his patent therefor from enforcing his present claim against the defendant for the infringement of his patent by the latter's use of the belts of small iron rods instead of the strips of the wire netting of Norcross, and that Turner's construction of his flooring was an infringement of the patent to Norcross.

Before reaching these conclusions, the argument that the reply of Norcross to the examiner, to the effect that one especial object of his invention was to dispense with rolled iron in all forms employing wire netting in place thereof, ought to estop him and the plaintiff from claiming that the use of the small iron rods constitutes an infringement, received study and meditation. But this statement must be read and given effect in the light of the circumstances surrounding Norcross at the time he made it, in the light of the question which was then before him for consideration, and in the light of the knowledge then possessed of the use of rolled iron for the purpose for which he used his strips of wire netting. The only use of rolled iron then under consideration was its use in the form of beams to support floors and especially in the form of the beams of Seeley. It had never been used in the place of strips of wire netting to construct a monolithic floor throughout a large building in a single panel capable of supporting itself on separate posts. The abandonment of a right is generally conditioned by the intention to abandon it. It is not to be presumed, but must be clearly evidenced by the act or declaration of the party charged therewith. The circumstances surrounding Norcross when he made his declaration, the subject-matter regarding which he uttered it, his knowledge of the use of rolled iron for the purpose for which he was using his strips of wire netting, have converged to convince that he never intended to renounce, and did not by this declaration renounce, his right to enforce his claim for an infringement of his patent as plain as that presented by the construction of Turner and so remote from the device of Seeley to meet which his statement was made.

Nor have the contentions that the flooring of Turner is not the mechanical equivalent of that of Norcross, because the cross-wires in the strips of netting have an effect in keeping the long wires from slipping which is not produced by the belts of small rods, but the belts of small rods are spaced apart and tied to keep them in place in the actual construction of Turner's device, because Turner places his rods in the upper while Norcross places his wires in the lower part of the flooring where they lie over the tops of the columns, because Turner's belts of rods are wider than Norcross' strips of wire netting, because Turner has enlarged the capitals of his columns and constructed cantilever heads for them and for other reasons of like character, failed to receive consideration. Conceding that these changes which Turner claims to have made were improvements on the device patented to Norcross, they did not deprive the plaintiff of his right to a remedy for the defendant's appropriation and use by equivalent means of the principle of his invention. The answer to all of these contentions is that the basic principle or mode of operation of the defendant's construction of beamless flooring is strips or belts of large wires or small rods

imbedded in concrete and laid over the tops of columns in the way described in and secured to Norcross by his patent, whereby a monolithic floor inclosing the wires or rods in a single panel, however large the building, is made to sustain itself and its load on separate columns without girders or beams. Extract this principle or mode of operation from the devices of Turner, and they become inefficient and useless. The floors will not sustain themselves on the posts. And as long as he continues to use the principle of Norcross and the mechanical means which he described and secured, or their mechanical equivalents, he cannot escape infringement.

[3] It is next said that the prior art discloses the fact that the invention of Norcross was anticipated or the claims of his patent so limited that either his patent is void or its effect is so narrow that the defendant's device fails to infringe. Much of this argument rests on the theory that the portions of the flooring of Norcross, in which the strips of wire netting lie, may be segregated from the remainder of the flooring by imaginary vertical planes drawn through the flooring along the sides of the strips and called beams, and that the result is that his floor is not without but is full of beams. It is an ingenious contention, but it is not sound. In the construction of the patents in this case and in the application of the law to the facts it presents, words must be given the same meaning that the patentees gave them and must be used to designate the same things they used them to indicate or nothing but confusion and mystification can result. Throughout the prior art and throughout these patents, girders and beams were and are horizontal supports of iron, wood, or other material, generally separate from the flooring, upon which the flooring rests or to which it is attached so that the girders or beams may support it. Floors which, without such beams or girders under, in, or over them, sustain themselves on separate columns by reason of strips of large wire netting or belts of small rods or like material which have been made integral parts of them, are floors without beams in the nomenclature of the art, and in thought and expression these meanings must be preserved in the discussion, consideration, and determination of the issues here in hand. The theory that the floors of Norcross and Turner contain and are supported by girders or beams is fallacious and cannot be permitted to prevail.

We turn to the prior art. Payne, in 1874, in English patent No. 2,786, disclosed a device for constructing a floor without girders to support it by dividing "the floor space into angular, generally rectangular compartments providing supports at the corners of the compartments" and disposing "the plastic concrete in vaults, groins, or fan vaulting." He stated in his specification that he connected the pillars longitudinally, transversely, or diagonally by ties or strengthened the outermost ones by buttresses to resist any thrust from flaws in the concrete, and that he sometimes used light diagonal arched, braced, or other girders to divide the rectangular spaces. But the specification and drawings conclusively show that the principle of his construction was the support of the floor by disposing in a series of arches or vaults resting on the supports concrete of sufficient thickness to sustain it-

self and then filling the arches or vaults, if desired, in order to make the lower side of the floor level. No conception of the support of a comparatively thin, level, smooth concrete floor in one panel or piece throughout a large building by strips or belts of large wire netting or small iron rods imbedded in the concrete and lying over the tops of the posts is suggested, much less taught by this patent, and it neither anticipates the patent of Norcross nor reduces the range of mechanical equivalents ascribed to it in the earlier part of this opinion.

Hyatt in his patent No. 206,112, issued July 16, 1878, shows how to strengthen slabs of concrete by inclosing flat thin rolled iron ties therein, as he says, so as to make it possible "to construct them sufficiently large to form an entire sidewalk having the side walls of the basement extension under the sidewalk for their foundation." He discloses methods of making beams or girders by inclosing iron ties of large size in cement or concrete, and writes in his specification:

"Where the spaces are great, as in mills and warehouses, the manner of constructing the beams admits of considerable variation, for they are needed in part, under these circumstances, to be fashioned as girders or short bridges in order to carry a portion of the flooring in place of the wall."

He declares that:

"It is the practice in common warehouse building to break the span by a row of columns topped by a girder, to carry the floor in conjunction with the side walls, the whole depth of such girder being seen underneath the floor, and to this extent at that line lessening the headroom of the apartment underneath, but by my method of construction the girder and floor become one, the girder not being underneath the floor, but a portion of it, and thus to a large extent lost to view in it," and that "*I*," in his figure 12, "represents the portion of the girder below the floor being only a fraction of the entire depth, the top of the floor at that part being the actual top of the girder."

These statements and a reading and consideration of the entire specification have convinced that Hyatt never conceived or so suggested that a mechanic skilled in the art could have constructed such a metallic-concrete flooring as that of Norcross, or the practicability or possibility of the use of such a floor in mills, warehouses, or other buildings without horizontal supports to sustain it. Hyatt's construction was clearly conditioned by the use of beams and girders to support the floor whenever the spaces between the walls were greater than the width of a city sidewalk.

Hallberg in his patents No. 659,965 and No. 659,966, issued October 16, 1900, describes various forms of tension rods to support tile flooring. In the form which most resembles the device of Norcross, he fastens to collars on the tops of supporting columns the ends of sagged tension rods which extend radially from each column to other columns or walls that outline a small rectangle. He incloses each of these rods in concrete or cement forming, what he calls, girders or beams, each composed of a single tension rod inclosed in concrete and extending from one column to another of the four columns or to the wall which outline the rectangle, but no farther, and he fills the triangles formed by these beams with flat arch tile. In one of his patents he shows a concrete layer spread upon the tile and writes that such a concrete

flooring is applicable to any of the constructions he describes. But none of his forms of construction suggests or describes the flooring of Norcross or his means of constructing it. None of them describes or suggests strips or belts of wire netting or small rods imbedded in concrete extending throughout the building and lying over the tops of the columns, each strip or belt extending out from each column in opposite directions, or a flooring composed of such strips or belts inclosed in a single level panel or piece of concrete extending throughout the building constituting a solid monolithic flooring capable of sustaining itself and its load upon the columns alone without beams or girders or other horizontal supports. None of them could have called to the mind of a mechanic skilled in the art the principle or mode of operation and the means invented by Norcross to accomplish the object he sought to secure.

English patent No. 452, issued to Scott in 1867; German patent No. 560,137, issued May 12, 1896, to Knoche; patent No. 634,986, issued to Matrai, October 17, 1899; English patent No. 16,187, issued to Gurtler in 1899; and a clipping from "The Doings in Expanded Metal," 1901—have also received study and meditation, but none of them comes nearer to an anticipation of the claims of the patent to Norcross or to a limitation of the range of mechanical equivalents which they secure than the patents which have already been discussed. It would therefore be useless to review them at length. Suffice it to say that a careful reading of the briefs of counsel and a study of the prior art as it is disclosed by the patents, publications, and testimony in evidence, have led to the conclusion that there is nothing in these patents or publications which anticipates the claims of the patents of Norcross or so restricts the range of mechanical equivalents which they secure to the plaintiff that the construction and the flooring of the defendant can escape from infringement.

One of the defenses which Turner pleaded and upon which his counsel insists is that before Norcross conceived the invention patented to him on April 29, 1902, on his application filed November 22, 1901, Turner had conceived, disclosed to others, and was diligently adapting and perfecting the flooring disclosed in his patent No. 1,003,384, and that "Norcross unjustly or surreptitiously obtained the said patent No. 698.542." This defense concedes, and rightly we think, although Turner has taken the opposite position in his other defenses, that Turner's construction embodies the principle and the means claimed and patented to Norcross; for if it did not the obtaining of the patent for them by Norcross could not have been done unjustly or surreptitiously, and this defense must be discussed and decided upon this concession. The patent raises the presumption that Norcross first conceived and reduced to practice this invention, and the burden was on the defendant, Turner, to prove by satisfactory evidence the averments of this defense. The burden is on him who alleges priority of conception or discovery of an invention secured by a patent to another to establish that fact. Where the claim of such priority is first made many years after a patent issued and it is supported by oral evidence only, the proof must be beyond a reasonable doubt. And where the

evidence is principally oral, accompanied by sketches or writings whose genuineness and dates are evidenced by oral testimony only, the proof must be at least clear, convincing, and satisfactory. Cantrell v. Wallick, 117 U. S. 689, 696, 6 Sup. Ct. 970, 29 L. Ed. 1017; Barbed Wire Patent, 143 U. S. 275, 285, 12 Sup. Ct. 443, 36 L. Ed. 154; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 703, 45 C. C. A. 544, 554; Keasbey & Mattison Co. v. American Magnesia & Covering Co., 143 Fed. 490, 497, 74 C. C. A. 510, 517; Emerson & Norris Co. v. Simpson Bros. Corporation, 202 Fed. 747, 750, 121 C. C. A. 113, 116.

The evidence is conflicting. Turner and Bell testified that in 1898 Turner made and exhibited to Bell a sketch in his memorandum book of four posts and of small rods extending over the tops of them on the lines of a rectangle and diagonally and a photograph of that sketch is in evidence. They also testified that in 1904 similar sketches, which have been lost, were made by Turner. Turner and Boatrite testified that in 1901 Turner made a sketch of belts of rods extending over piers of masonry in the same way, that this sketch has been lost, and Boatrite, at the time he testified, made a sketch from memory which he said illustrated that made by Turner in 1901. These witnesses also testified that these sketches were made to represent rods to be imbedded in a concrete floor for the purpose of dispensing with beams. Turner testified that he had made other sketches, but that he never had any experimental data to indicate how floors constructed according to his sketches would sustain themselves and that he never constructed such floors until 1906. Norcross and French testified that in 1899 or 1900 they constructed and tested a single panel or piece of concrete flooring 30x16 feet in area, in which were inclosed strips of wire netting, that the wire netting extended along the sides and ends of the rectangle formed by the eight outer posts and diagonally from these posts to the ninth post, which was located near the center of the rectangle, and that this flooring was supported by these nine posts alone. There was evidence tending to prove that prior to 1906 Norcross had successfully used in the construction of buildings a floor made in the way described in his patent, and there was no evidence in the case that Norcross derived his conception of his invention directly or indirectly from Turner. The record discloses the indisputable and significant fact that, although Norcross applied for his patent in 1901 and secured it in April, 1902, Turner never assailed it prior to this suit and never reduced the invention he describes, or that which he describes in his patent, to practice until 1906, nor applied for a patent for it until January 23, 1905. There is other testimony upon this issue. It has been read and considered, and the result is: (1) That the evidence that Turner first conceived this invention is not of that clear and satisfactory nature which is required by the law to overcome the counter presumption raised by the patent and Turner's silence and inactivity from 1898, when he claims to have conceived the invention, until 1905; and (2) that the record fails to convince that Turner was using reasonable diligence in adapting and perfecting the invention

when Norcross obtained the patent for it, or that Norcross obtained that patent either unjustly or surreptitiously.

[4] It is argued that because Norcross brought no suit for infringement of his patent for many years and embodied it in few buildings and sold it to the plaintiff for some $2,000, the latter is estopped by laches and by this silence and inactivity in its grantor from maintaining this suit for an infringement of the patent. But this patent was of record and was itself notice to the defendant and to all the world that the owner of it held the exclusive right to make, use, and sell the flooring which it secured, and that any one who made, sold, or used it violated that right. Neither Norcross nor the plaintiff ever withdrew that notice, neither of them ever in answer to any inquiry of the defendant, by act or deed, renounced or indicated that he would renounce his right to prosecute for such trespasses. Delay and silence within the life of a patent, unaccompanied by such acts or silence of the owner as amount to inducing deceit and thereby to an equitable estoppel, and the evidence fails to satisfy that there have been any such acts or omissions in this case, will not deprive such owner of his right to recover for an infringement of the exclusive rights secured to him by the patent. It is no defense to a suit for an injunction and an accounting on account of the continuing trespasses of an infringer that the latter has been trespassing on the rights of the owner of the patent for years with impunity. Menendez v. Holt, 128 U. S. 514, 523, 9 Sup. Ct. 143, 32 L. Ed. 526; McLean v. Fleming, 96 U. S. 245, 253, 24 L. Ed. 828; Stearns-Rogers Mfg. Co. v. Brown, 114 Fed. 939, 944, 52 C. C. A. 559, 564; Ide v. Trorlicht, Duncker & Renard Carpet Co., 115 Fed. 137, 148, 53 C. C. A. 341, 352. The plaintiff was not estopped from maintaining this suit.

[5] In view of the state of the prior art and the restriction of the breadth of the claims wrought by the acquiescence of Norcross in the rejection of his first three original claims, claim 2 of his patent is useless. It must be read and interpreted as a part of the specification which discloses the fact that the greatest shearing strains are at and near the supports, and the greatest tensions are at and near the supports and near the centers of the spans. This claim 2 therefore is for a flooring of concrete with metallic network so arranged therein that it will be greatest at and near the supports and near the centers of the spans. It is limited by Seeley's patent to the metallic network composed of strips of wire netting and the mechanical equivalents thereof that are not the mechanical equivalents of Seeley's beams. In so far as it assumes to secure anything more than is saved by claims 1, 3, and 4, it is therefore void.

The argument that claims 1, 3, and 4, or either of them, when read and construed, as they must be, as a part of the entire contract evidenced by the specification which contains them between the United States and the patentee, is so indefinite as to be void, has not proved convincing. A careful perusal of the specification sufficiently refutes it.

The review of the prior art, the long and fruitless endeavor before the disclosure of this patent to find a way to construct concrete floors

for large buildings without beams or girders, the gradual approach to the desideratum, its first conception and reduction to practice by Norcross, and its large and successful subsequent use, have satisfied that his flooring and his method of construction were not within the reach of the mechanic skilled in the art, but were novel and useful and the product of the genius of the inventor. The chief contentions of the parties have now been noticed, none of their arguments which are contained in 522 printed pages of briefs has escaped perusal and study; but it would be useless to extend this opinion by a review of those which have not been discussed herein. The conclusion of the whole matter is that claims 1, 3, and 4 of patent No. 698,542 are valid and are infringed by the construction of a flooring in the way described in No. 985,119 and No. 1,003,384; that the decree below must be reversed; and that the case must be remanded to the court below, with instructions to render a decree in favor of the plaintiff for an accounting and an injunction.

It is so ordered.