**BURDICK et al. v. PERRINE et al.\***

**No. 10828.**

Circuit Court of Appeals, Eighth Circuit.
July 1, 1937.

\*Rehearing denied Aug. 16, 1937.

204

Otis A. Earl, of Kalamazoo, Mich. (Ralph E. Williamson, of Minneapolis, Minn., Chappell, Earl & Chappell, of Kalamazoo, Mich., and Williamson & Williamson, of Minneapolis, Minn., on the brief), for appellants.

F. A. Whiteley, of Minneapolis, Minn., for appellees.

Before WOODROUGH, THOMAS, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Appellants herein are the inventor, and assignee, respectively of patent No. 1,-882,771, for improvements in automatic spring-winding fishing reels. Application for this patent was made by Burdick on June 14, 1930, and the patent was issued to him October 18, 1932, and assigned to appellant Shakespeare Company, now the owner thereof.

Perrine, appellee, filed an application on December 17, 1928, for improvements in automatic spring-winding fishing reels, and thereafter and on February 7, 1933, patent No. 1,896,369 was duly issued to him and by assignment became the property of appellee Perrine Manufacturing Company. On October 1, 1928, appellant William Shakespeare filed an application for a patent for a similar device and on April 11, 1933, patent No. 1,903,559 was issued to him and by assignment became the property of appellant Shakespeare Company. The latter patent is involved in a suit by the owner thereof for an alleged infringement of it by appellees herein, now pending in this court.

Shortly after the Perrine application for patent No. 1,896,369 was granted, and the patent issued, and on April 13, 1933, appellants filed in the Patent Office an application for a reissue of their patent No. 1,882,771, whereby they sought to add to the claims therein, certain properties, functions, and attributes allegedly inherent in their said patent No. 1,882,771, but which by inadvertence and mistake were not claimed; in short, that the claims contained in patent No. 1,882,771 were narrower than the actual invention. In re Murray (Cust. & Pat.App.) 77 F.(2d) 651; Rev.St. § 4916, as amended by Act May 24, 1928, section 64, title 35, U.S.C. (35 U.S.C.A. § 64), as amended.

The subject-matter which by such reissue the appellants sought to embody in their proposed Reissue Patent is as follows:

"Count 1. In a fishing reel, the combination of a support adapted to be attached to a fishing rod, a rotary spring drum for a fishline mounted on said support, a brake mounted to move in a single plane only and normally exerting a braking pressure in said plane opposing rotation of said drum, the said pressure being reduced when said drum rotates in the direction opposite to that in which it is driven by its spring, and hand-operable means for removing the braking effect of said brake to permit the line to be wound up by said spring drum.

"Count 2. In a fishing reel, the combination of a support adapted to be attached to a fishing rod, a rotary spring drum for a fishline mounted on said support, a brake pivotally mounted to move in a single plane only and normally exerting a braking pressure in said plane opposing rotation of said drum, the radial distance from the pivotal point of said brake to the point of its braking contact varying as the pressure of said brake is reduced and applied, and hand-operable means for removing the braking effect of said brake to permit the line to be wound up by said spring drum.

"Count 3. In a fishing reel the combination of a support adapted to be attach-

ed to a fishing rod, a rotary spring drum for a fishline mounted on said support, a brake pivotally mounted to move in a single plane only and normally exerting a braking pressure in said plane opposing rotation of said drum in the direction to wind the line thereon, the radial distance from the pivotal point of said brake to the point of its braking contact decreasing as the line is drawn out, and hand-operable means for removing the braking effect of said brake to permit the line to be wound up by said spring drum.

"Count 4. In a fishing reel, the combination of a support adapted to be attached to a fishing rod, a rotary spring drum for a fishline mounted on said support, a brake pivotally mounted to move in a single plane only and normally exerting a braking pressure in said plane opposing rotation of said drum in the direction to wind the line thereon, the braking surface of said brake being eccentric with relation to its pivotal point whereby the braking pressure is reduced as the line is drawn out, and hand-operable means for removing the braking effect of said brake to permit the line to be wound up by said spring drum."

The above counts are now embodied substantially in claims numbered 7, 8, 9, and 10 of appellee's Perrine patent No. 1,-896,369, alleged by a counterclaim of appellees filed herein to have been infringed by appellants.

In this situation, and since the above-quoted subject-matter was claimed by Burdick in his application for a reissue patent and was embodied by Perrine in his patent No. 1,896,369, an interference was declared, by the Patent Office. On a hearing, the Examiner of Interferences awarded priority of invention to appellee Perrine. An appeal to the Board of Appeals of the Patent Office resulted in an affirmance of the priority of Perrine's invention of the subject-matter of the above-quoted counts, and he was allowed claims numbered 7, 8, 9, and 10 of his patent No. 1,896,369 which embodies them, and issue to appellants of a Reissue Patent containing said claims was denied. The above interference was No. 66,479 in the Patent Office. Theretofore an interference, No. 62,364 had also been pending between Perrine and Shakespeare which involved claims 17, 18, and 19 of Shakespeare patent No. 1,903,559, in which priority was awarded to Shakespeare,

which latter patent as said above is involved in [(C.C.A.) 91 F.(2d) 199] now in this court on submission. Following the decision of the Board of Appeals awarding priority of the subject-matter of the above-quoted counts, now claims numbered 7, 8, 9, and 10 of patent No. 1,896,369, and the issue of the latter patent to Perrine, and the refusal by the Commissioner to grant a Reissue Patent to Burdick containing such subject-matter in any claim, this action was brought in equity under the provisions of Rev.St. § 4915 as amended, section 63, title 35, U.S.C. (35 U.S.C.A. § 63), in the federal court of the district of appellees' residence; no appeal from the ruling of the Commissioner of Patents having been taken to the Court of Customs and Patent Appeals as appellants could now it seems, have elected to do. Rev.St. § 4915, as amended 35 U.S.C.A. § 63, supra, as amended.

After answering the bill of complaint so filed by appellants, the appellees filed a counterclaim against them, in which they set up infringement by appellants of claims 7, 8, 9, and 10 of Perrine's patent 1,869,369, priority of invention whereof had been awarded to Perrine over Burdick in interference No. 66,479 already referred to.

The court below found for appellees in the matter of priority of invention of the subject-matter of claims Nos. 7, 8, 9, and 10, of Perrine's patent No. 1,896,369, and denied a decree ordering a reissue, of patent No. 1,882,771 to appellants. The trial court found as the basis of his decree that appellants, even if Burdick, the patentee, had a concept of the invention shown in patent No. 1,882,771 (reissue of which is herein sought) in the summer of 1927 he had not reduced his invention to practice till late in 1929; that appellants are estopped, for that they had not set up their alleged right to the subject-matter contained in claims 7, 8, 9, and 10 of appellee's Perrine patent No. 1,869,369, when a former interference No. 62,364 was pending in the Patent Office between the same parties or their assignees, and that the burden of proof (which appellants did not meet) was on them to show reasonable diligence in reduction to practice, prior to December 17, 1928, the date of the application (and the constructive date of reduction to practice) of Perrine, appellee herein for patent No. 1,896,369 here in interference. In fair effect, both the Examiner of Interferences and the Board of Appeals of the Patent Office similarly so held.

There are cases which hold that it is the duty of a patentee or common assignee of two or more patents (under penalty of estoppel to subsequently contest the issue) to bring into ·interference all applications, patents, and claims,· existing between the parties to the interference. In re Austin (Cust. & Pat.App.) 40 F.(2d) 756; In re Allsop, 58 App.D.C. 187, 26 F.(2d) 559). This the trial·court, and the two administrative bodies of the Patent Office found appellants had not done in the prior interference No. 62,346, wherein full opportunity to do so was afforded. But we think we need not invade the above suggested fruitful field, since the matter, *though seemingly well-founded, involves a long and intricate record.* Nor is it necessary to consider, whether reduction to practice, in so-called "land-fishing" alone, with a reel having gears and working parts made of brass and german silver instead of steel, does not constitute a reasonable reduction to practice, as the Patent Office bodies seem to have held. Both of these views *seem to us to be at least debatable, and so we pass them by* and consider alone the matter of the burden of proof; since the latter question will, when ruled dispose of the case.

█ As stated already Burdick, appellant and patentee of patent No. 1,882,721 filed his application therefor June 14, 1930; while Perrine, appellee and patentee of patent No. 1,896,369, filed his application therefor, December 17, 1928. The latter date is then the constructive date at which Perrine reduced his invention to practice, and the burden is on Burdick, as the junior party, to prove that he not only conceived the invention embodied in the four quoted counts of the interference, prior to Perrine's *filing date, but that thereafter he used* reasonable diligence in reducing his invention to practice. Conceding, arguendo, as the trial court did, and as the Patent Office did, that the inventive concept in dispute was entertained by Burdick as early as 1927, as the testimony of the party Burdick himself, and his witness Russell, tends to show, it seems to us fairly clear, that, the reels of appellants embodying the claims in controversy, were not fitted with the mechanism made pursuant to these claims, till the summer or fall of 1929, almost one year after the party Perrine had reduced his invention to practice and had filed, and had pending an application for a patent therefor.

Witnesses Dr. Balch and a Mr. McClelland were given reels, by appellant Shakespeare to try out in fishing, in May and July, 1927, or 1928 (Dr. Balch does not recall whether it was 1927 or 1928, but Mr. McClelland says it was 1928), which, they think, were made in accord with the claims in dispute. These reels were found wholly satisfactory, as to free-stripping of the line from the spool. They each say they are not familiar with the internal construction of these reels so used by them. Yet with this knowledge of satisfactory working of these reels, the fact remains that not till the summer or fall of 1929, did appellants begin production of reels *embodying the claims in dispute, and not till* June 14, 1930, did they file an application for a patent thereon. Pending the period from the year 1927, when the party Burdick says he first conceived the invention embodied in the interference and June 14, 1930, when he filed his application for a patent therefor, appellant Shakespeare Company seemingly had under production a reel with similar *functions invented by* William Shakespeare, president of appellant company. Application for a patent for the latter, was filed by Shakespeare on October 1, 1928, and thereafter, and on April 11, 1933, patent No. 1,903,559 was issued to him thereon and by him assigned to appellant Shakespeare Company.

It seems fairly clear that those witnesses who gave oral testimony as to the dates at which they used a reel which they think may have been constructed in accord with the claims here involved in interference, confused the reel made by appellant Shakespeare Company, under the Shakespeare patent (for which he applied October 1, 1928), with reels later, and in 1929, made pursuant to the claims in interference. In the very voluminous record before us, we find no documentary, or even physical exhibits to corroborate the oral testimony as to use, or reduction to practice, earlier than 1929. Indeed, such alleged corroboration, and the inferences fairly to be drawn from it, strongly support the view that till 1929, appellants were making· and pushing *the sale of the reel of the patent* to Shakespeare.

On the other hand, while appellee Perrine could well have rested on the filing date of his application for his patent which contains the claims in dispute here, which was December 17, 1928, he went farther, and by evidence well-nigh conclusive, prov-

ed that he had made and used, in July, 1928, a reel with a mechanism for a free-stripping spool, made under the claims here in controversy.

■ On the trial in the lower court, all of the evidence, including the exhibits, which was before the Patent Office, was offered, as was also much additional oral evidence, the latter largely directed toward proof of reduction to practice by use, of the Burdick reel in actual fishing. The weight and credibility of such oral evidence was, of course, for the trial court, to whose views about it, we are bound to accord great weight.

As already indicated, the burden of proof was on Burdick, who was the junior party, because he had filed the application for his patent No. 1,882,771, on which he was seeking a Reissue Patent containing the claims in controversy, on June 14, 1930; while Perrine, the senior party had filed the application for his patent No. 1,896,369, on December 17, 1928. This burden of proof required Burdick to show that in point of time he was the first to conceive the invention set forth in the claims in interference here, and that thereafter he had exercised reasonable diligence in reducing his inventive concept to practice. The cases are not in entire accord as to the weight and sufficiency of the evidence necessary to be adduced by the junior party, in order successfully to carry this burden of proof of priority, as against a previously issued patent. The cases wherein interferences are declared as to co-pending applications, seem merely to require that a preponderance or greater weight of the evidence shall be in favor of the junior party. Waern v. Carter, 58 App.D.C. 189, 26 F. (2d) 561. But in cases wherein, as herein, it is sought to modify or nullify a previously granted patent, by proof of prior use and invention and reduction to practice by the junior party, the weight of authority seems to require that every reasonable doubt should be resolved against such junior party. Drum v. Turner (C.C. A.) 219 F. 188; Coffin v. Ogden, 18 Wall. 120, 124, 21 L.Ed. 821; Barbed Wire Patent Case, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154. The lack of accord mentioned and found in the cases, is largely due to the varying circumstances under which interferences are presented. The circumstances which vary from case to case have to do with the staleness of the attack made on the patent or the application; with whether the evidence of the junior party is oral or documentary; whether it is by exhibits or drawings which prove themselves intrinsically, or such as require extrinsic oral evidence to identify or corroborate them; and whether the adversary applications were, or were not copending when the interference was declared. So it is not surprising to find decisions which on first blush, seem contradictory, for that some of them hold that the evidence in favor of the junior party must be "beyond a reasonable doubt"; others that such evidence shall be "clear, convincing and uncontradicted," and still others, that it need merely be "a preponderance or the greater weight of the evidence." But the question is not important here, because the evidence adduced by appellants did not satisfy the rule even if the facts shall require only a greater weight or preponderance of the evidence.

■ It is not possible, we think after reading the record in this case to conclude that appellants have shown by even the preponderance of the evidence that they or Burdick used reasonable diligence, prior to appellee Perrine's filing date of December 17, 1928, to reduce their concept of the invention to practice. Conceding, arguendo, that Burdick had in mind as early as 1927 the value of an improvement in spring-winding reels which would remove the pressure of the brake, when the line was drawn out, or the spool rotated in the unwinding direction, he seems to have laid it aside till the summer of 1929, in favor of a reel made under another patent, which appellant Shakespeare Company had under production in 1928. Meanwhile, Perrine in July, 1928, conceived the subject-matter of the four claims in interference, and in the same month reduced his concept to practice, and thereafter, on December 17, 1928 applied for a patent therefor.

We think the conclusion reached by the two administrative bodies of the Patent Office and by the trial court was correct and should be affirmed.

■ From this view it inevitably follows that appellant Shakespeare Company has infringed appellee Perrine Manufacturing Company's Perrine patent No. 1,896,369, as charged in the counterclaim. While there is in the answer of appellants a denial that appellee Perrine was the first inventor of the reel described in patent No. 1,896,369, no other attack for invalidity was made thereon by appellants. We have felt constrained to hold that Per-

rine was the first inventor thereof, so far as concerns claims numbered 7, 8, 9, and 10, therein, and since neither anticipation by any pleaded prior art nor prior public use is either pleaded, proved, or even sought to be proved, the presumption of validity arises from the fact of the grant.

And so it follows that the judgment in favor of appellees on their counterclaim for infringement should also be affirmed, with costs, and so it is ordered.