## SHERMAN v. AMERICAN TELEPHONE & TELEGRAPH CO.

### No. 4–159.

District Court, S. D. New York.

April 16, 1941.

Allen & Allen and Marston Allen, all of Cincinnati, Ohio, and Cooper, Kerr & Dunham, of New York City (Marston Allen, of Cincinnati, Ohio, Thomas J. Byrne, of New York City, and Jos. W. Hatfield, of Dayton, Ohio, of counsel), for plaintiffs.

J. W. Schmied, of New York City (Edgar W. Adams, J. W. Schmied, and Bateston F. Stoddard, all of New York City, of counsel), for defendant.

SYMES, District Judge.

This is an action under § 4915, Rev. Stats. of the United States, Tit. 35, § 63, U.S.C.A.

The complaint alleges the plaintiff Sherman, prior to May 28, 1932, was the true, original and first inventor of certain new and useful improvements in typewriting machines not known or used by others and not patented or described, etc. And being such first and sole inventor and thereby entitled to a patent thereof, he duly filed in the United States Patent Office, on May 28, 1932, his application for patent. Said application was given a serial number 614,238. That after due proceedings in the Patent Office the Commissioner of Patents adjudged his invention described and claimed in said application in part interfered with certain other pending ap-

plications, namely, an application of one Claude C. Rose, Serial Number 612,103, filed May 18, 1932. The subject matter of the interference being defined by the Commissioner of Patents in a count as follows: "The combination with a writing machine having a platen and a writing position past which record material is progressively advanced, of a pin type feeding device for positively feeding the record material past the writing position in a predetermined path of travel, said pin type feeding device being mounted for bodily movement toward and from the path of travel of the record material into and out of the interengaging relation therewith."

That said Rose assigned his entire right and interest in his application to the defendant, the American Telephone and Telegraph Company.

It is then alleged that plaintiff Sherman duly presented to the Examiner of Interferences sufficient proof, as required by law, to establish the fact that he was the true, original and first inventor of the improvements constituting the subject matter of the interference, and that after due proceedings had and presentation of evidence the Commissioner denied priority of invention in the interference issues to Sherman and awarded priority to Rose. That he, Sherman, appealed from the decision of the Commissioner of Patents to the Board of Appeals of the United States Patent Office, which, after hearing, erroneously and contrary to law affirmed the holding of the Examiner of Interferences awarding priority to Rose.

The claim involved in the interference, supra, had been allowed to Sherman in his application, Serial Number 708,902, filed January 29, 1934. The claim was suggested to Rose in August, 1936, by the Patent Office, in accordance with the practice then of setting up an interference. The interference was declared in October, 1936. In accordance with Rule 110 of the Patent Office in interference matters, the parties filed their preliminary statements, Sherman setting up as his dates a conception about May 1, 1931, a written description May 15, 1931, a disclosure to others May 1, 1931, and a reduction to practice by the filing of his application for patent No. 614,238, May 28, 1932. Rose filed his application for patent May 18, 1932, and in his preliminary statement states he made drawings and a written description and ex-

plained his invention to others on or about September 15, 1930. His reduction to practice was the filing of his application on the date above given—a year and eight months later.

Shortly thereafter Sherman moved to add his earlier application No. 614,238 to the interference. The Patent Office ruled the motion should be denied, as he, Sherman, already had an application in the interference and that he must elect a single application for the interference. In accordance with this requirement Sherman elected that No. 614,238 be the one, and accordingly this was done May 21, 1937. The preliminary statements of the parties were laid open to each other and time set to take the testimony. Thereupon Sherman, because of the discovery of further facts, moved to amend his earlier preliminary statement to set up earlier dates, and filed a proposed preliminary statement alleging he had made the invention of the interference claim by a conception during February, 1929, by a drawing on February 28, 1929, and other drawings in October, 1929, April, 1930, and May, 1931, a first written description February 28, 1929, and a reduction to practice by construction of a full-sized operative machine, successfully tested and operated at the factory of the Standard Register Company at Dayton, Ohio, in the latter part of October, 1929.

Ruling on this motion the Patent Office said it was "better to defer consideration of the motion until final hearing."

Sherman took his testimony in November, 1937, while the testimony of Rose was stipulated. The Patent Office, through the Examiner of Interferences, and then upon appeal by Sherman, through its Board of Appeals, held against Sherman, ruling Sherman was restricted to May 1, 1932, as his first date in accordance with his first preliminary statement, and that Rose had shown an earlier date than this, to wit, September 15, 1930. Thereupon Sherman's motion to amend his preliminary statement was denied and the interference count was awarded to Rose.

Sherman, the record discloses, claims to have found certain sketches relied on to show his earlier dates in his closed files of a patent No. 2,000,649. A machine constructed according to this patent had been marketed by Sherman and in the course of the interference he tried to get this construction (Ex. 3) admitted as showing an earlier date of invention. This machine did not have a pin-feeding mechanism mounted for body movement, as required by the count, and it was accordingly ruled out. Both the Examiner and the Board held Sherman should have looked into the files as to this issued patent before he filed his first preliminary statement, it appearing that if he had done so his recollection would have been refreshed by certain sketches he would have found there. His failure to do this appeared to the Board to be insufficient care. The Board held Sherman must show by evidence "clear and convincing" that he could not have made a correct preliminary statement in the first instance, and having failed to do so, he was denied the right to amend his preliminary statement. Following this Sherman filed this suit under Rev.Stats. 4915, supra, and at the trial relied solely upon the record made in the Patent Office proceedings.

In this court plaintiff contends, as a matter of law, that questions of pleadings were all that were involved in the Patent Office proceedings, and secondly that the "award of priority" made in the Patent Office was in fact merely a ruling on the pleading, not based on the truth or falsity of Sherman's evidence in support of his claimed invention date of October, 1929. Hence, he argues, the Patent Office ruling is of no weight in this suit in this court. Plaintiff's counsel states in his brief (p. 8), however, that it has been the law, "where the Patent Office makes findings of ultimate facts against a party in an Interference, that on the same record the Court will support these findings unless very strongly impelled against it."

The question stated on this record, as the court views it, is whether Sherman or Rose first completed the invention residing in the interference count, and that is largely determined by the question, did Sherman have this machine (Ex. 3) developed and reduced to practice as a full-sized, operative model, capable of performing the task in connection with the combination set forth in the claim. To prove this the plaintiff relies upon the testimony of Metzner that when he found this machine in the pent house, where it had been stored for many years, it had a tag on it, dated and signed by Sherman and Metzner, and that it was the habit and custom of the company of not completing developing work on a model until

it was operative and had been fully reduced to practice, which was evidenced by the tag. Nobody testified that they had actually tested out the machine on the date in question back in 1929, and no witness was produced who had ever operated it under working conditions, and its existence was evidently forgotten from 1929 until its discovery in 1937.

As plaintiff states in his brief an invention is not completed by merely thinking about it or making drawings, but by actually making a model of the device "which does not require further inventive work to make it serve the purpose desired."

According to his quotation from Robinson on Patents, § 127, reduction to practice means reduction to successful practice. "Nothing must be left for the inventive genius of the public; and his invention must show this for itself before he is entitled to a patent."

According to the same authority, § 128, actual employment of the machine is not necessary where its availability for use is apparent from an inspection of the invention itself. Yet where nothing less than such employment can afford this evidence, as in the case of an art or chemical composition "and sometimes of machines and manufactures, such tests must be applied as will determine that the end which it purports to serve can be accomplished."

Walker on Patents, Vol. 1, p. 384, says mere conception as evidenced by a drawing or any kind or description does not constitute reduction to practice, and, p. 384: "While mere experiment with a model that is subsequently laid aside is not reduction to practice" (quoting cases).

Page 385: "long and unexplained delay following a test of an invention is inconsistent with a successful claim that it was successful."

And Smith v. Warnock, 50 App.D.C. 326, 271 F. 556: "It is the actual test of a machine, and not the time of its completion, that is essential to establish reduction to practice."

Pyrene-Minimax Corporation v. Palmer, 67 App.D.C. 33, 89 F.2d 505, at page 510: "A reduction to practice is accomplished when the inventor's conception is embodied in such form as to render it capable of practical and successful use."

And Burdick v. Perrine, 8 Cir., 91 F.2d 203, syllabus No. 1 says: "The junior party in interference proceeding has burden to prove that he conceived invention embodied in counts of interference prior to other party's filing date and also that thereafter he used reasonable diligence in reducing his invention to practice."

And speaking of the requirements of tests in reduction to practice, the author (Walker on Patents, Vol. 1, p. 386) quotes Sydeman v. Thoma, 32 App.D.C. 362. This case divides the decisions on this much-litigated question into three classes. The first includes devices so simple and of such obvious efficacy that construction of one of a size and form intended for, and capable of practical use, is held sufficient without tests in actual use. The second consists of those where a machine embodying every essential element of the invention, having been tested, and its practical utility for the intended purpose demonstrated to reasonable satisfaction, has been held to have been reduced to practice, notwithstanding it may not be a mechanically perfect machine. The third class includes those where the machine is of such a character that the particular use for which it is intended must be given special consideration, and require satisfactory operation in the actual execution of the object.

In the absence of clear and convincing evidence the invention declared in the interference count seems to come within the latter classification, if we remember that this particular art is crowded and the device in question is designed for a particular, narrow purpose.

That Sherman did not think much of this machine (Ex. 3) is evidenced by the fact that although he was constantly engaged in filing patent applications and making sketches, he never included this one in any application, or called it to any one's attention, nor is there evidence of actual operation of the machine in 1929. Its resurrection at a later date was incidental to a search for another machine.

The object of the patent laws is to promote the progress of science and the useful arts for the benefit of the public and society, and an inventor has no right without cause or reason to withhold his inventions from the public.

In Vanore v. Improta, 58 App.D.C. 130, 25 F.2d 918, 923, the Court of Appeals for the District of Columbia in an interference proceeding said: "As against the inventor who is guilty of inexcusable de-

lay in asserting his priority according to law, all the equities and presumptions are in favor of the inventor who, though later in conception, first files his application for a patent. An inventor may have a reasonable excuse for not promptly applying for a patent; but, if he has none, and unreasonably delays in taking the necessary steps to secure a patent, the courts are warranted in presuming that his claim of reduction to practice was nothing better than an abandoned experiment." Citing cases, among them Mason v. Hepburn, 13 App.D.C. 86.

Sherman now claims the benefit of this machine that he had set aside and forgotten, as well as by everyone in the factory, for seven or eight years, and concerning which he claims no knowledge until it was accidentally discovered by Metzner. Metzner says he was instructed by Sherman in September, 1937, to safeguard a certain demonstrating machine, not involved in this case, which, due to building alterations going on at the factory, was in danger of being lost or destroyed. That agreeable to this instruction he supervised its storage in the pent house on top of the Standard Register factory, and while so engaged was surprised to discover Exhibit 3—an Underwood typewriter equipped with a pin-type feeding device—which he took down to Mr. Sherman.

Sherman testified that the tag found attached to it was written out with reference to the machine when it was completed, and that it was an operative machine when the tag was put on it is true because, he says, his staff never ceased developing machines until they were operative. There is a total absence of testimony that the tag on the exhibit was ever made out for that particular machine. Metzner had no independent recollection of this particular transaction, and in testifying why he knew he placed his signature on the tag the day the card was made out, his answer, like that of Sherman, was, "because that is our regular custom."

Furthermore, no witness has stated Exhibit 3 was ever used to write out anything or that he or any one else operated it in 1929, or that any forms were fed through this machine prior to 1937. Nor is there evidence of any, or of sufficient instances, to establish the alleged custom relied on. The mere fact that a lot of machines were found in the pent house with tags attached is not sufficient in character and amount to carry thorough conviction that there was a reduction to practice before the tags were affixed, especially on this record, where the existence of the machine was forgotten by Sherman from 1929 until its discovery in 1937.

▉ Metzner also testified that this machine, which is the plaintiff's evidence of reduction to practice, was never put into practice, because Sherman was not satisfied it was the final solution for typewriter attachments, and instructed his staff to continue their engineering on finding better ways and means of doing this before we place it on the market. Mr. Metzner states further he has no knowledge of any evidence to support the Sherman date of conception and disclosure of May 1, 1931. So we are forced to conclude the plaintiff's proof does not establish any reduction to practice of Exhibit 3.

▉ This view is reinforced by the rule in Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657, construing § 4915. There, as in the case at bar, the plaintiff was challenging the priority award by the Patent Office and the court said it "should, we think, be held to as strict proof."

And said, 153 U.S. page 125, 14 S.Ct. page 773, 38 L.Ed. 657: "Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction."

The rule has special application here, where the court is asked to reverse the Patent Office tribunal solely upon the record made before the Patent Office Examiner, without the presentation of any new evidence. Thus this suit is nothing more than an appeal, although technically a proceeding de novo.

▉ In a situation such as this a court in reviewing the factual decision of an administrative bureau upon the record there made only, applies the salutary principle that the latter had the opportunity to observe the witnesses and their manner and behavior on the witness stand—an important factor in determining the weight to be given to the statements of any wit-

ness. This rule is especially applicable in the case at bar, where the two tribunals we are asked to reverse—unlike many other administrative bodies—consist of disinterested experts, well qualified by experience and learning to pass ·on questions of this nature.

■■■ On the question of granting Sherman's motion to change his preliminary statement, the rule appears to be (48 C.J. 151, § 205), the party may be permitted, "on motion, to amend his preliminary statement so as to correct a material error which has occurred through an honest inadvertence or mistake," and: "The commissioner's action in allowing or refusing such an amendment will not be disturbed on appeal, unless there has been a palpable miscarriage of justice."

And see Myers v. Myers, 55 App.D.C. 281, 4 F.2d 948, syllabus 2, and 48 C.J. 156, § 214. And, § 215, a party will not be permitted to prove and rely on a date earlier than alleged in his preliminary statement, even though the testimony so shows, "unless an amendment of the statement in this regard has been allowed."

And, according to the same authority (48 C.J. § 216), the burden of proof in an interference proceeding is upon the junior applicant to show conception prior to that of his adversary, and either actual reduction to practice, or diligence in reducing to practice prior to the filing date of his adversary. Citing a long list of authorities.

■■■ A case under § 4915 in point on the facts with the case at bar is Martin v. Curtiss Aeroplane & Motor Co., D.C., 26 F.2d 701, 703. There, as with us, as the court observed, it was apparent that careful consideration was given in the Patent Office to all the evidence submitted, and that well-considered opinions were filed. The court says—"while the acts of the Patent Office are not binding on this court, weight should be given to the decisions and findings of fact and law made by that Office." Citing Morgan v. Daniels, supra, and other cases.

■■■ The case further holds that the plaintiff first to conceive an invention and last to reduce to practice, cannot claim a patent in absence of proof of reasonable diligence, and held that a wait of nearly four years, during which time he filed six or more applications for patents, is lack of diligence. And finally: "The burden of proof is on the plaintiff to establish his case by evidence which in character and amount carries thorough conviction."

■■■ In Automatic Weighing Machine Co. v. Pneumatic Scale Corp., 166 F. 288, the Court of Appeals for the First Circuit sums up the law and marshals the authorities on the questions at bar. It states (citing authorities) that he who first conceives and invents a machine, art or composition, may date his invention back to the time of its conception, if he connects the conception with its reduction to practice by reasonable diligence on his part, so they are substantially one continuous act. The same court also held that on the question of diligence in adopting and perfecting an invention, the decision of the Patent Office tribunals is entitled to great weight, if it is 'not absolutely controlling. Citing Morgan v. Daniels, supra.

■■■ There is nothing in this record to justify Sherman's delay of over eight years in claiming the benefits of this machine (Ex. 3), and he was, therefore, as a matter of law, guilty of inexcusable delay in asserting priority of conception.

We feel, as the Patent Office evidently did, that this Exhibit 3, upon which Sherman now relies as showing a completed invention back in 1929, could not have been so entirely forgotten, if it is of such potential value as now claimed.

■■■ In addition the plaintiff's evidence is not sufficient to justify the overruling of the well-considered opinions and views of the Patent Office Examiners.

Judgment should be entered for the defendant dismissing the complaint, with costs, and it is so ordered.